GEORGIA RAILROAD & BANKING CO. *v.* AUCHINACHIE.

1. Where a proffered amendment to a plea avers that the plaintiff in his petition alleges the violation of a statute as an element of the defendant's liability, and attacks the same as unconstitutional, the refusal to allow such amendment is not erroneous where the statute attacked is not declared on, either in terms or by reference to its essential features, as entering into the defendant's liability.

2. The isolated circumstance that the train by which the alleged wrongful death was caused carried interstate passengers is insufficient to render a police statute, designed for the protection of travel on railroad trains in this State, void as being an unreasonable burden upon commerce between the States.

3. Where a railroad company discovers that a trespasser on its track is in danger of being struck by the approaching train and is unaware of his peril, an active duty on the part of the company arises, and it is then bound to exercise ordinary and reasonable care to prevent injury to him. The charge criticised was more favorable to the defendant than it had a right to require, and a new trial is not required because of the exceptions taken to it.

4. The doctrine of comparative negligence and apportionment of damages does not apply where the negligence of the injured person was the sole cause of the injury, or where by the exercise of ordinary care he could have avoided the consequences to himself caused by the defendant's negligence; but if both the person injured and the defendant's agents were negligent, and the negligence of the person injured was not the sole cause of the injury, and he could not by the exercise of ordinary care have avoided the consequences of the defendant's negligence, the damages may be diminished by the jury in proportion to the default of the injured person, notwithstanding he may have been a trespasser.

5. Where it appeared on the trial that the person injured was on the railroad track near a public crossing at the time of his injury, it was not error for the court to charge the jury that while a failure of the defendant's servants operating the train to comply with the law, in respect to keeping the cars under control and ringing the bell at public crossings, would not of itself amount to such negligence as to become the basis of a recovery, yet the jury might consider such failure, if any existed, as a circumstance, in connection with all the other evidence in the case, in determining whether or not the railroad company exercised proper diligence.

6. The evidence was sufficient to support the verdict, and the court did not abuse his discretion in refusing a new trial.

SEPTEMBER 29, 1914.

Action for damages. Before Judge Roan. DeKalb superior court. March 29, 1913.

This action was originally brought by Mrs. Jennie Auchinachie against the Georgia Railroad and Banking Company, to recover damages for the alleged wrongful death of her husband. The plain-

tiff died pending the suit, and her minor daughter, by next friend, was made a party in her stead. The essential features of the allegations relating to the place and manner of the death of the decedent, and the charges of negligence against the company, are as follows: The railroad tracks traverse the town of Lithonia; in addition to the main line there are several side-tracks. The decedent was killed by a passenger-train running at a high rate of speed, as he was walking along the main track at a point between the depot and South street, or Cagle's crossing. This point was in a populous community, and pedestrians were permitted to use the track going to and from the depot. It was a daily occurrence for numerous people to use the tracks for the purpose of going to and from town; and this use was common and notorious, and well known to the railroad company and its employees and agents. The decedent walked upon the side-track about eight hundred feet beyond what is called Cagle's crossing, or South street, and was going in the direction of the station or depot. He proceeded on the side-track until he reached South street, where he left it and walked upon the main line in the direction of the station. The defendant's employees saw him upon the main track for a distance of at least a quarter of a mile before they approached him, and in ample time to have avoided the catastrophe; but they failed to stop or attempt to stop the train, and ran it in a reckless and unlawful manner, and at the dangerous rate of speed of not less than forty miles per hour, in utter disregard of human safety, in a place where the public was permitted to travel, and in a thickly populated community where the public crossing was kept up by the defendant and the municipality. The homicide occurred at a path, which was a projection of Wiggins street across the railroad, and which the public generally used as a footpath in crossing at that point. The railroad was negligent, in running its train at an unlawful rate of speed; in not stopping the train in time to avoid injuring the decedent; in not keeping a continuous and sufficient lookout; and in not checking the train and getting it under control, so as to be able to stop it if any person should be on the track.

The court disallowed an amendment to the defendant's plea, alleging that the blow-post law, as codified in §§ 2675, 2676, and 2677 of the Civil Code of 1910, was unconstitutional as constituting a burden upon interstate commerce, and as violative of the constitu-

tion of the United States, art. 1, sec. 8, par. 1. In the proposed amendment the distance between the termini of the railroad company was alleged, the number of crossings, the present schedule, and the probable time that it would take to make the distance if the law were complied with. A verdict for the plaintiff was rendered, which the court refused to set aside.

*Joseph B. & Bryan Cumming* and *John S. Candler*, for plaintiff in error.

*Alonzo Field* and *Paul L. Lindsay*, contra.

EVANS, P. J. (After stating the foregoing facts.)

1. There was no error in refusing to allow the amendment to the plea. The amendment was disallowed on March 5, 1912, and the case was tried at the succeeding December term of the court. The amendment proceeds on the theory that the plaintiff had alleged as a ground of negligence the violation of the blow-post law as contained in the Civil Code (1910), §§ 2675, 2676, 2677. The defendant misconceived the petition as alleging the violation of these code sections as a ground of negligence. They are neither referred to in terms nor by allegation of their essential features. This law imposes upon a railroad company the duty of erecting a post at a distance of four hundred yards from the center of a public-road crossing, or a private crossing established pursuant to law, and requires the engineer whenever he shall arrive at such post to blow the whistle of the locomotive until it arrives at the public road (or ring the bell, if the crossing is in the corporate limits of a city), and to simultaneously check and keep checking the speed thereof, so as to stop in time should any person or thing be crossing the track "on said road." It is alleged that the decedent, while walking upon the main line of the railroad between a public crossing and the station of the railroad company, was struck by a train of the defendant at a point where a footpath crosses the track. The bare fact that pedestrians were accustomed to cross the railroad track at the point where the decedent was struck by the train did not make the footpath a public road or a private way established pursuant to law; and it is only to crossings of this kind that the statute applies. *Southern Railway Co.* v. *Combs,* 124 *Ga.* 1004 (53 S. E. 508). It is true that if a person is injured upon the track near a public crossing, although a failure to comply with the statute would not within itself amount to negligence per se, yet such failure may be con-

sidered, along with the other facts, as illustrating the railroad company's negligence. The only allegation having the slightest reference to the blow-post law is that charging the defendant's servant with negligence in "not checking said train at the time and place aforesaid, and getting same under such control as to be able to stop the same if any person should be on said track at said time and place." Nothing is said about ringing the bell, blowing the whistle, or other features of the statute. This allegation would equally apply to other circumstances than those contemplated in the statute. There being no allegation in the petition charging the railroad company with a violation of the blow-post law, the amendment to the plea was irrelevant as not responsive to anything contained in the petition.

2. The defendant offered to prove that the train which killed the decedent was a passenger-train carrying interstate passengers at the time. This evidence was excluded on the ground of irrelevancy. The circumstance that some of the passengers on this train were traveling to and from points beyond the State can of itself have no relevancy to any issue involved. It is insisted, inasmuch as it appeared from the evidence that the decedent was struck near a public crossing, that the failure to observe the blow-post law could be considered by the jury in determining the negligence of the defendant's agents, and that it was competent for the defendant to show that such law was unconstitutional as a burden on interstate commerce. It was not proposed, so far as the record disclosed, to supplement this testimony by showing that the blow-post statute was a burden on interstate commerce. The isolated fact that some of the passengers on a train are traveling to and from points beyond the State can not affect the validity of police regulations designed for the safety of travel by railroad in this State.

3. The court charged the jury as follows: "Gentlemen, it is alleged here on the part of the defendant, or contended here rather, whether it is in the pleadings or not, that this man was a trespasser on the track, and that the railroad company was only due him a certain degree of care. On that I charge you, on the status of a trespasser: One who walks upon a railroad track not at a road crossing is a trespasser thereon; and [that while the road would be liable for the wanton or wilful wrong of its agents acting within

the scope of their duty, or for gross negligence 'or carelessness evincing a reckless disregard of the safety of others, or where they perceive the danger of a party in time and make no effort to avoid it], still the company is under no such obligations to a trespasser as to those who are properly and lawfully upon its premises; but they are under obligations, gentlemen, not to wilfully or wantonly kill him or hurt him. One who goes upon the tracks or premises of a railroad company, except at a public crossing, or in a highway, without the invitation or license of the company, express or implied, is a trespasser. It may also be stated, as a general rule, that the company perhaps owes no duty to a trespasser upon its tracks, except to do him no wilful or wanton injury. A trespasser is a wrong-doer, and it is a general principle of jurisprudence that courts will not aid a wrong-doer. [The fact that the trespasser is a wrong-doer does not, however, justify malicious, wanton, or wilful maltreatment of him, and a failure to use reasonable care to avoid injury to him after a discovery of his danger may sometimes be sufficient evidence of wantonness or wilfulness; this is for the jury to say.] [If after discovering the danger of a trespasser, and his inability to escape, the company fails to exercise reasonable care, it will be liable if the exercise of such care would have prevented the injury.] [The presumption that a person apparently of full age and capacity, who is walking or standing upon the track, will leave it in time to save himself from harm, will not avail, where the person on the track appears to be intoxicated, or otherwise off his guard, if it so appears to the engineer who is in charge of the train.] The company is at liberty to act on this presumption, that is, that he will leave the track in time to save himself from the injury, in the event there is nothing apparent to the engineer or those in charge of the train that he is in a condition where he can not take care of himself. At places other than crossings, or in public highways, the railroad track is the private property of the company, and no one, other than the company's servants or employees in the necessary discharge of duties there, have any right to be thereon, and more especially so as to their using same as a thoroughfare or passway on which to walk or travel; and though the company may not wantonly injure persons thus intruding upon and using the same, yet if a person, being an adult, and not known to those in charge of the train to be deficient in discre-

tion, or in physical ability to take care of himself, or not known to be deficient in his faculty of hearing, and not presenting any indications of being disabled or incapable of taking care for his safety, then the persons in charge of the train have a right to conclude, and to act upon that conclusion, that such person is in the possession of all his faculties to enable him to do so, and will leave the track in time to prevent injury, and save himself from injury, and they are not bound to stop or check up the train on his account; [but whatever, gentlemen, they are required to do in the exercise of ordinary care, and that is for the jury to say, what would be ordinary care, if it was in the exercise of ordinary care to sound the whistle, or ring the bell, or to give the alarm, or anything else that ordinary care required to notify him of the approach of the train, or do anything that ordinary care required, they are required to do that]."

Exceptions are taken to the parts of this charge that are enclosed in brackets. The quoted charge is composed of literal extracts taken from the cases of *Central R. Co.* v. *Brinson,* 70 *Ga.* 207, *Western & Atlantic R. Co.* v. *Bailey,* 105 *Ga.* 100 (31 S. E. 547), and *Central R. Co.* v. *Denson,* 84 *Ga.* 774 (11 S. E. 1039). These cases concerned injuries to persons walking upon railroad tracks. In the *Bailey* case the question before the court was as to whether the petition was good on demurrer; and it was held that under the pleaded facts a cause of action was stated,—in other words, that the pleaded facts authorized an inference of negligence. In the *Brinson* and *Denson* cases the court was discussing the sufficiency of the evidence as establishing negligence. In none of the cases did the court undertake to declare, even inferentially, that the statements quoted from the opinions were proper to be given in charge to a jury. As has been frequently observed, it is not proper to give in charge every expression to be found in the reported opinions of this court. These expressions sometimes are used arguendo, and sometimes relate to entirely different subject-matters than to which they are applied in the trial of another case. Negligence, where the act is not forbidden by law, is fundamentally a question for the jury, and it is improper to tell the jury that the law presumes negligence from a given set of circumstances. It was improper for the trial court to tell the jury that the engineer might presume that the decedent would get off the track, as a matter of

law. Cases might occur where the engineer of a railroad company would be under no obligation whatever to stop the train; and, on the other hand, cases might arise where a failure to do so would be gross negligence. L., N. A. & C. Railroad v. Patchen, 167 Ill. 204 (47 N. E. 369). The charge of the court in this case was erroneous as against the plaintiff; and we will consider whether or not the exceptions taken to it by the railroad company show that it was likewise harmful and prejudicial to it. The exception to the extracts is that they were not authorized by the evidence, and amounted to an expression of opinion; and some excerpts are criticised as laying down the rule of ordinary care as the measure of the duty on the part of the engineer, when in fact, as the company contended, the only duty upon the part of the engineer was not to wantonly or wilfully run over the decedent after it was apparent to such engineer that the decedent would not or could not get off the track in time to save himself. These exceptions to the charge must be considered in connection with the evidence. It appeared on the trial that the decedent was killed by the defendant's passenger-train, which was due to arrive at Lithonia about noon, but which was running about ten or fifteen minutes behind the schedule time. In approaching Lithonia from the direction from which the train was coming the main line of the track is straight about 3,400 feet before reaching the station of the defendant. Between the beginning of this straight line and the station there are two public crossings, one known as South street, or Cagle's crossing, the other Main street, or Decatur crossing. The latter is at the station, and the former is about 1,600 feet from the station. At the point where the decedent lost his life were three side-tracks, and some freight-cars were standing on them. The decedent came from the public road, which runs parallel with the railroad, upon the side-track, and walked upon the side-track until he reached Cagle's crossing. He then left the side-track and walked upon the main line, proceeding in the direction of the station. The point where he was struck by the train is from 250 to 300 feet from Cagle's crossing. The testimony of the plaintiff tended to show, that the place of the homicide was a town of about 1,600 inhabitants, and that the tracks of the company where the decedent was killed were commonly used by the community as a passageway to and from the station of the defendant; that the engineer blew the station signal, and just before

or about the time the train reached Cagle's crossing he gave an alarm signal; and that the decedent, just before he was struck by the train, turned his head and looked at the engine, "as if though he was going to look at one passing." The defendant introduced the testimony of the engineer, which tended to show that as soon as the engine reached the beginning of the straight track in its approach to the station he gave a station signal. He observed the decedent, who turned his head and appeared to look at the train. When the train reached a point about 100 or 125 feet from Cagle's crossing, the decedent giving no evidence that he was aware of the approach of the train, the engineer gave the danger alarm and at the same time applied the emergency brakes. The engine and train, after striking the decedent, were stopped within about 400 feet. The testimony of the fireman was in substantial accord with that of the engineer.

It is fairly inferable that the engineer, in approaching a regular station where his train was scheduled to stop, saw the decedent practically half way between the point where the decedent came into view of the engineer and the station. The engineer by subsequent measurement ascertained that he was about 1,110 feet from the point where he first saw the decedent. He had just given the signal for the approaching station. He says the decedent turned his head as if he heard the signal, but further states that he continued walking down the track in the direction of the station, apparently heedless of the train approaching him from the rear. Without further warning, the engineer ran his train until he was near Cagle's crossing before he undertook to give any further signal or attempt to stop his train, which he testified was running at a rate of speed of 30 or 35 miles an hour at this point; and, according to his own testimony, the engine was so close to the decedent that, notwithstanding his application of emergency brakes, he was unable to stop the train until it had passed the point where it had struck the decedent about 400 feet. According to the evidence, the track where the decedent was killed was commonly used as a thoroughfare by the public in going to and from the depot. It was a question for the jury to decide whether the conduct of the engineer, under the circumstances, in failing to earlier check the speed of the train, in not blowing the alarm whistle sooner, or in not taking other precaution, when he saw that the decedent was apparently

heedless of its approach from behind, measured up to that degree of care required by the law, and whether the conduct of the decedent, under all the circumstances, amounted to such gross negligence as debarred him from a recovery. One complaint is that certain of the excerpts from the charge are erroneous because they lay down the rule of ordinary care as the measure of duty on the part of the engineer. Under some circumstances a failure to observe ordinary and reasonable care and diligence to avoid the injury would render a railroad company liable even to a trespasser. It has been several times broadly stated in our reported cases, that, as a general rule, a railroad company owes no duty to a trespasser upon its tracks, except to do him no wilful or wanton injury. But it has also been ruled that the duty to observe ordinary and reasonable care towards a trespasser arises when his presence becomes known to the engineer, and that a failure in such care and diligence after that time, from which injury results, unless it could have been avoided by the use of ordinary care on the part of the person hurt or killed, will render the company liable. *Atlanta &c. Air-Line Ry. Co.* v. *Gravitt,* 93 *Ga.* 369 (5), 370 (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. R. 145). There is also some confusion, resulting from the indiscriminate use of general expressions to the effect that a negligent act, amounting to wantonness, is the equivalent of a wilful act. See discussion in *Southern Ry. Co.* v. *Chatman,* 124 *Ga.* 1034 (53 S. E. 692, 6 L. R. A. (N. S.) 283, 4 Ann. Cas. 675). There may arise occasions when one is called upon to do an affirmative act to protect a person from an injury caused by an instrumentality under his control, which injury can be averted by exercising ordinary care; and the failure to exercise such care may amount to a positive act. It has been held that "when a railroad company first discovers that trespassers on its track are in danger of being struck by the approaching train, and that they are unaware of their peril, an active duty on the part of the company arises, and it is then bound to exercise the care required by law in the case of persons not trespassers." Clemans *v.* C., R. I. & P. R. Co., 128 Iowa, 394 (104 N. W. 431, 5 Ann. Cas. 1006). A rule which would excuse a railroad company from exercising reasonable care to avoid running over a trespasser on its track, whose presence is known to the engineer, and who is apparently oblivious of his danger, would be

inhumane. The excerpt from the charge last complained of, taken in connection with other portions, is not cause for a new trial.

4. It is contended that the rule of law as to apportionment of damages has no application where the person injured is a trespasser. The doctrine of comparative negligence and apportionment of damages does not apply where the injured person's own negligence was the sole cause of the injury, or where by the exercise of ordinary care he could have avoided the consequences to himself caused by the defendant's negligence; but if both the person injured and the agents of the defendant were negligent, and the decedent's negligence was not the sole cause of the injury, and he could not by the exercise of ordinary care have avoided the consequences of the defendant's negligence, the damages may be diminished by the jury in proportion to the default of the injured party, notwithstanding he may have been a trespasser. *S., F. & W. Railway* v. *Stewart,* 71 *Ga.* 427; *Western & Atlantic Railroad* v. *Bloomingdale,* 74 *Ga.* 604.

5. The evidence disclosed that the decedent was struck within about 250 to 300 feet of a public crossing; and it was not error for the court to charge the jury that while a failure of the defendant's servants operating the train to comply with the law, in respect to keeping the cars under control and ringing the bell at public crossings, would not, within itself, amount to such negligence as to become the basis of a recovery, yet the jury might consider such failure, if any existed, as a circumstance, in connection with all the other evidence in the case, in determining whether or not the railroad company exercised proper diligence. *Macon &c. Ry. Co.* v. *Parker,* 127·*Ga.* 471 (56 S. E. 616).

6. Other criticism is made upon the court's instructions to the jury; but after a careful consideration of the whole case, while not approving the charge as a whole, it is more favorable to the defendant than it had a right to have. The evidence was sufficient to support the verdict, and we do not think that the court abused his discretion in refusing a new trial.

*Judgment affirmed. All the Justices concur.*