## ATLANTIC GREYHOUND CORPORATION v. LOUDERMILK (two cases).
### Nos. 9308, 9309.
Circuit Court of Appeals, Fifth Circuit.
March 21, 1940.

---

A. C. Wheeler, E. D. Kenyon, and Chas. J. Thurmond, all of Gainesville, Ga., for appellant.

Hamilton Kimzey and Herbert B. Kimzey, both of Cornelia, Ga., and B. P. Gambrell and Reuben R. Arnold, both of Atlanta, Ga., for appellee Mrs. William Daniel Loudermilk.

B. P. Gambrell and Reuben R. Arnold, both of Atlanta, Ga., and John E. Frankum, of Clarksville, Ga., for appellee Mrs. J. C. Loudermilk.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

On August 21, 1938, William Daniel Loudermilk and Harold Starling Loudermilk were killed when the automobile in which they were riding collided with a bus of the Atlantic Greyhound Corporation. Harold Loudermilk owned the automobile and was operating it at the time of the accident; William Daniel Loudermilk was riding as a guest. Mrs. William Daniel Loudermilk sued Atlantic Greyhound Corporation to recover damages for the death of her husband. Mrs. J. C. Loudermilk sued to recover damages for the death of her son, Harold Loudermilk. The two cases were tried together. The jury returned a verdict of $1,500 for Mrs. J. C. Loudermilk, the mother, and a verdict of $5,000 for Mrs. William Daniel Loudermilk, the wife. Judgments were entered on the verdicts and Atlantic Greyhound Corporation appealed.

The appeals were submitted together with a stipulation that the evidence in the record in No. 9308 be used for determination of both cases. We dispose of the appeals in one opinion.

The only question for decision is whether or not the evidence was sufficient to support a finding by the jury that the Atlantic Greyhound Corporation was negligent in such sort as proximately caused the death of the two Loudermilk boys. The appellant contends that the evidence was insufficient to support the verdict and that the court erred in refusing to grant its motions for a directed verdict and a new trial.

The record shows that the Loudermilk automobile and the Greyhound bus collided at a point near a filling station on State Public Highway No. 13 in Habersham County, Georgia. The bus was traveling northeasterly toward Toccoa, Georgia, and the automobile was going southwesterly toward Cornelia, Georgia. The filling station was located on the east side of the road south of and seventy-five feet from the intersection of State Public Highway No. 13 and a side road leading to a Resettlement Administration Building and out to a place called Ayersville, the road being known as the Ayersville Road.

Witnesses for plaintiffs testified that the Loudermilk automobile was traveling at a speed of about twenty miles per hour; that when it came within one hundred feet of the Ayersville Road, Harold Loudermilk held out his hand and signaled for a left turn; that the car began to turn from the right side of the road to the left and toward the Ayersville Road and the filling station driveway; that when the car was about twenty feet from the Ayersville Road and one hundred feet from the filling station it crossed the center line of the highway. There was evidence that the bus traveling east was coming around a curve south of the filling station; that it kept to its right hand side of the road, and that just before the collision it pulled partially off the pavement and struck the Loudermilk automobile just as its right front wheel was leaving the pavement. The bus struck the car at its right front fender and door, knocking and dragging it some seventy-five or eighty feet and killing both occupants.

We are impressed with the seemingly studied effort of all the witnesses to give, without interest or bias, clear and lucid details of just how the accident occurred. B. G. Davidson, who perhaps had the best opportunity to see the accident, testified that he was standing between the filling station pumps when the accident occurred; that he saw the Chevrolet automobile pulling in; that it was traveling about twenty miles per hour as it approached the filling station; that when it came within fifteen or twenty feet of the Ayersville Road it began to cut sharply across the center of the highway and that "it was a second after he began to cut over and I heard the bus and looked and saw it right on top of me." He estimated the speed of the bus to be between fifty and sixty miles per hour. He did not hear the bus give a signal and concluded that the accident was unavoidable under the circumstances. He further testified: "Yes, by 'the circumstances' I mean the speed the bus driver was coming through there. If he had been going at a speed of say forty-five miles an hour, or forty miles an hour, I believe he could have gone to the left. He could have passed on the left, that is, if there had not been any cars behind the Loudermilk car. As to whether I did not see any cars behind it, I did not notice any."

Roy Loudermilk testified that the Loudermilk car passed him on the road and that he was following about 175 or 200 yards behind it, and that he saw Harold signal for a turn. "It looked to me like they were pretty well across the center of the highway when they were hit. * * * I didn't see the bus until just before it hit the automobile." Mrs. Dovie Loudermilk who was riding with Roy Loudermilk testified to the same effect.

The evidence is in conflict as to whether or not the bus driver sounded the horn or gave any signal as he came around the curve. The bus did not slow down for the Ayersville Road intersection. See Georgia Code 1933, Sec. 68-303(i).

The bus driver testified that he was on time and that the bus was running at a speed of approximately forty miles per hour, the statutory maximum speed at which busses may run in order to maintain their schedules. Georgia Laws 1931, No. 243, Sec. 32, p. 212, Georgia Code 1933, Sec. 68-634. Other witnesses testified that the bus was running from forty to seventy-five miles per hour. Certain it is that the evidence raised a jury question.

The doctrine of comparative negligence prevails in Georgia, and it was open to the jury to find that while the operator of the automobile may have been negligent in and about crossing the highway, the defendant was also negligently operating the bus at an excessive and illegal rate of speed which proximately caused injury and death. Moreover, it was further open to the jury to find from the evidence that if the bus had slowed down for the curve and Ayersville Road intersection the accident would not have occurred.

The Georgia statute provides that "An operator meeting another vehicle coming from the opposite direction on the same highway shall turn to the right of the center on the highway, so as to pass without interference." Georgia Code 1933, Sec. 68-303(c). The defendant, however, may not take refuge behind this statute since the evidence is in sharp conflict as to the facts. The jury might conclude that at the time of the accident the bus was moving at a speed of sixty miles per hour, eighty-eight feet per second, or in five seconds the bus would move 440 feet. The jury might further find that when Harold Loudermilk left his lane of safety and attempted to cross the highway the danger from the oncoming bus was not yet apparent. It was the duty of the jury, if they found both Harold Loudermilk and the bus

driver guilty of negligence which contributed to the accident, to measure the negligence of each party and diminish the damages "in proportion to the amount of default attributable ·to the person injured." This is what the jury did. Western & Atlantic Railroad Co. v. Ferguson, 113 Ga. 708, 39 S.E. 306, 54 L.R.A. 802; Americus, etc., Railroad Co. v. Luckie, 87 Ga. 6, 13 S.E. 105; Atlanta Railway Co. v. Gardner, 122 Ga. 82, 49 S.E. 818; Freeman v. Nashville, etc., Railroad Co., 120 Ga. 469, 47 S. E. 931; Southern Ry. v. Wilbanks, 5 Cir., 67 F.2d 424; Georgia Code, 1933, Sec. 105-603.

 The negligence of the driver of the automobile was not imputable to the guest, and the verdict for $5000.00 in favor of his wife is supported by the evidence. Woods v. Gettelfinger and Spalding Etc., 5 Cir., decided December 26, 1939, 108 F.2d 549; Southern Ry. v. Lawrence, 5 Cir., 67 F.2d 426.

The judgment in each case is affirmed.

SIBLEY, Circuit Judge (dissenting in part).

I agree that the jury could find that the Greyhound Bus was exceeding the speed limit fixed by statute, and that the excess speed contributed to the accident or its fatality, and that the negligence of the driver of the automobile is not attributable to his guest, so that the verdict in favor of the wife of the guest is sustainable. I think the recovery by the mother of the driver of the automobile is not sustainable because she cannot recover unless he could if he had not died, and he could not recover by reason of a statute of Georgia which is applicable to all negligence cases, first found in the Code of 1863, now Code Section 105-603: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." The last sentence of the section refers to the Georgia doctrine of comparative negligence (in the earlier decisions called contributory negligence) by which when both parties are at fault the plaintiff may recover, but the recovery is to be diminished in proportion to the default attributable to him. But even then the plaintiff's fault must be less than the defendant's, because if they are equally to blame neither can recover from the other. This doctrine of comparative negligence was apparently applied by the jury here in making a moderate verdict as respects the driver. But the law of comparative negligence does not, I think, apply here, because the first sentence of the quoted section applies and excludes all recovery. I think no other conclusion can reasonably be reached under the evidence than that the driver by the exercise of ordinary care could have escaped the consequences of the speed negligence of the bus.

It has often been held by the Supreme Court of Georgia that the statute cutting off recovery and excluding any comparison of negligence applies when the defendant's negligence is in existence and is open and apparent, and its consequences can be avoided by ordinary care on the plaintiff's part. While comparing negligences is always the work of the jury, the question of failure to exercise ordinary care in escaping consequences of another's negligence, (usually a jury question), is in plain cases a matter of law, and because of it involuntary non-suits and directed verdicts are often granted, verdicts are set aside, and even demurrers sustained. A recovery is simply unlawful. Ordinary care or diligence is itself defined by statute: "In general, ordinary diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances." Code, Sect. 105-201.

The decisions are multitudinous. Those of the Supreme Court alone are of final authority. A few will be cited. The earliest applying this statute is Macon & Western R. R. Co. v. Johnson, 38 Ga. 409, where a wife sued for the negligent killing of her husband while a train passenger. The court held the statute valid and applicable to railroad cases and all others of personal injury by negligence; and that by force of it, notwithstanding the general rule of apportionment of damages according to ·fault, there can be no recovery at all where this statute applies. The jury's verdict was set aside, because the deceased had warning that the train which killed him was expected. In Western & Atlantic R. R. v. Bloomingdale, 74 Ga. 604, the previous cases are reviewed, and where a man undertook to walk between railroad tracks when he could have gone down a neighboring street it was held: "The facts of this case show that the injury to the plaintiff was the result of his own negligence, and could have been

avoided by the exercise of ordinary care on his part, and he was not entitled to recover therefor." The verdict was set aside. In Americus, A. & L. R. R. Co. v. Luckie, 87 Ga. 6, 13 S.E. 105, there was a reversal because the trial judge confused the statute in question with the law of comparative negligence, the former being held a distinct rule of law. A non-suit was held proper where plainly the plaintiff could have avoided the consequences of defendant's negligence by ordinary care on his part in Fulcher v. Central of Georgia R. R. Co., 110 Ga. 327, 35 S.E. 280, and Barber v. East & West R. R. Co., 111 Ga. 838, 36 S.E. 50; Hicks v. Georgia S. & F. Ry. Co., 108 Ga. 304, 32 S.E. 880; Evans v. C. & W. R. R. Co., 108 Ga. 270, 33 S.E. 901. In Western & Atlantic R. R. Co. v. Ferguson, 113 Ga. 708, 39 S.E. 306, 54 L.R.A. 802, cited in the majority opinion and a leading case, the verdict stood because the plaintiff testified he did in fact look to see if a train was coming before he went on the track, and saw none. The court carefully explained the statute and previous decisions, summing the matter up thus (italics added): "The duty imposed by law upon all persons to exercise ordinary care to avoid the consequences of another's negligence does not arise until the negligence of such other is existing, and is *either* apparent, or the circumstances are such that an ordinarily prudent person would have *reason to apprehend its existence*." As applied to crossing a railroad track it was said: "The rule is settled that one about to cross a railroad track must use his senses in the way that an ordinarily prudent person would under similar circumstances use them, in order to determine whether it would be *safe to cross at that time and place;* and this is true notwithstanding the company may be by law required to give signals, slacken speed, or do such acts as would, if faithfully performed, render improbable, if not impossible, injury to any one crossing the track." "If there is anything present at the time and place of the injury which would cause an ordinarily prudent person to *reasonably apprehend the probability,* even if not the possibility, of danger to him in doing an act which he is about to perform, then he must take such steps as an ordinarily prudent person would take to ascertain *whether such danger exists, as well as* to avoid the consequences of the same *after its existence is ascertained;* and if he fails to do this, and is injured, he will not be allowed to recover." In Moore v. Southern Ry.

Co., 136 Ga. 872, 72 S.E. 403, 404, of one who sat down on the end of a railroad cross-tie it was said, citing many cases: "In cases of personal injuries, the plaintiff as a conscious human agent is bound to exercise ordinary care to avoid the consequences of the defendant's negligence, by remaining away, going away, or getting out of the way of a *probable or known* danger. * * * He can avoid danger by refraining from going into what he knows is an unsafe place." A non-suit was affirmed. In Ball v. Walsh, 137 Ga. 350, 73 S.E. 585, it was held the consequences of the landlord's negligence in not repairing a bad porch could have been avoided by ordinary care, and a demurrer was sustained to a declaration. In Georgia Railroad & Banking Co. v. Auchinachie, 142 Ga. 513, 83 S.E. 127, it was held that the law of comparative negligence has no application where by ordinary care the plaintiff could have escaped the consequences of defendant's negligence. In Central of Georgia Ry. Co. v. Tapley, 145 Ga. 792, 89 S.E. 841, 842, it was held that under the statute an action for damages will not lie if the plaintiff did not use ordinary care to escape defendant's negligence "after it came into existence and was known to him, or could have been discovered by the exercise of ordinary care." In Atlantic Coast Line R. R. Co. v. Fulford, 159 Ga. 812, 127 S.E. 274, questions certified by the Court of Appeals were answered, and in headnote 5 answering question 4 the plaintiff was held barred as a matter of law because he knew he was in a place of danger walking near a railroad track, and because of other noises could not well hear, and did not look. The latest case is Vaissere v. Pound Hotel Co., 184 Ga. 72, 190 S.E. 354, where a demurrer was sustained because the plaintiff did not look, when she could easily have seen. Moore v. Seaboard Air Line Ry. Co., 30 Ga.App. 466, 118 S.E. 471, announces the law that the statute applies both where defendant's negligence is discovered and where in the exercise of ordinary care it could have been discovered by the use of the senses of sight and hearing, and sustains a demurrer.

There can be no doubt that when the driver of an automobile on a main paved highway turns left across the path of oncoming vehicles he incurs the risk of a crash, and especially so where a curve in the road ahead prevents his seeing far. Though the then Georgia statute allowed no vehicle to run over forty miles per hour it

is common knowledge that most of them ran much faster. Whatever the speed of the bus may have been, it is testified by six disinterested and intelligent passengers on it, of whom there is no sort of impeachment, that they distinctly saw the approaching automobile an appreciable time before it swerved to its left across the center line of the road, and then turned sharply across the path of the bus. It is certain that the driver of the automobile could have seen the bus as soon and as far as these passengers (not to mention the bus driver) say they saw his car. Either he did not look, or else he looked and saw and took the chance against the requirement of the statute, Code, Sect. 68-303(c), that in meeting another vehicle he must keep to his right of the center of the road. This he could easily have done up to the time he turned sharply into the path of the bus when it was less than a hundred feet away. In broad daylight, on an open paved highway, with no emergency upon him, and no possible excuse for his conduct, and no real conflict in the evidence, whether this driver did not look, or turned after having seen the bus, it is the plainest sort of case to apply the statute. The broken whiskey bottle found in his car after the crash may explain but does not excuse his want of ordinary care. I think the district court and this court are wrong in not applying this Georgia statute which denied recovery in such a case. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.