SOUTHERN RAILWAY CO. *v.* EUBANKS (two cases.)

1. A recovery can not be had against a railroad company for the homicide of a child who, while in a safe place, is, on the approach of a train, ordered by his sister in charge of him to sit down, and who obeys the order and. sits down until the train is very near him, when he rises, runs across the track, and is killed by the engine.
2. Applying the strictest rules of diligence against the railroad company in regard to trespassers upon its track, there was no evidence to support a verdict against the company.

Argued January 27, — Decided February 11, 1903.

Actions for damages.    Before Judge Reid.    City court of Atlanta.    August 13, 1902.

*Dorsey, Brewster & Howell, Sanders McDaniel,* and *Arthur Heyman,* for plaintiff in error.

*John Clay Smith* and *Anderson, Anderson & Thomas,* contra.

SIMMONS, C. J.    Two separate actions were brought against the Southern Railway Company by Eubanks and his wife, for the homicide of their child, the wife basing her action upon the ground that she was dependent upon the services of the child for a support, and the father basing his action upon the loss of the services of the child during minority.    In each case there was a verdict for the

plaintiff, a motion for a new trial by the railroad company, and a judgment overruling such motion. The company excepted in each case. The two cases were argued together here, as a decision in either will be controlling in the other. There were several grounds in the motions for new trial, but all of them were abandoned in the argument here, except that the verdict was contrary to evidence and without evidence to support it. It was contended for the defendants in error, that the verdicts in their behalf should be sustained because there was evidence that the employees of the railroad company were negligent in running at a high and reckless rate of speed, and in not seeing the child upon the right of way; that the track was straight for several hundred yards from a certain curve to where the child was struck by the engine; that the homicide occurred at a point where the people of the neighborhood frequently walked upon the track, and the employees of the company knew this or were put upon notice of it by the character of the locality; and that the speed of the train should have been moderated and a careful watch maintained. It appears from the evidence that two girls and the child, the last about five years old and all of them residents of the neighborhood, had been permitted by their parents to go in search of peaches. In their search they had occasion to go along the right of way of the railroad company. The track was ballasted with slag. There were two tracks at this place, the main track and a "dead" track which was but little used. The girls walked upon the "dead" track. The child was barefooted and could not walk upon the slag, which was large and rough and had sharp edges. He, therefore, walked upon a path on the other (east) side of the main track and about three and a half or four feet beyond the ends of the cross-ties. The girls heard a train behind them, and, upon looking, discovered that it was but a short distance away and approaching at a rate of thirty-five or forty miles an hour. The sister of the little boy, believing that she had not time to go to him in safety and that there was not time for him to come to her, told him to "squat down." He obeyed, but, as the train approached him, he arose and attempted to cross to his sister. He crossed the main track but was struck by the engine before he had cleared the cross-ties. From the blow his death resulted in a short while. The place was not at or near a public crossing. According to the plaintiffs' evidence, the engineer did not

ring his bell or blow his whistle. The track on which the child was killed was upon a high embankment. At the point at which he entered upon the track, a short distance back from where he was killed, there was on one side of the track a steep hill, on the other side a branch and swamp. It was in a rough part of the county. There was no house nearer than a hundred yards to the track, and this was upon the steep hill mentioned. There was a path coming down this hill to the track, and there was another path, according to a map put in evidence by the plaintiff, which ran from Eubanks' house to the unused track and thence between it and the main track to a point not far from the power-house of a street-car company, where it crossed the main track. On the tracks there was no visible evidence of this path, because the passing of pedestrians made no impression on the rough slag with which the tracks were ballasted. There was another path running along the east side of the main track, about three and a half or four feet from the ends of the cross-ties, as above stated. This last path was twelve to eighteen inches wide and fourteen to eighteen inches below the level of the track of the railroad company. There was evidence that the people in the neighborhood, men, women, and children, went along the right of way of the company in visiting each other and in going to and from the power-house. There was no evidence whatever that the employees of the company knew that the right of way was so used. The engineer testified that he had run his train along there for twelve years and during that time had never seen any one walking on the track at this place or upon the path alongside the track. The conductor swore that the place was not thickly populated and was not more frequented than any other place on the road. The testimony of all the witnesses showed that the use of the "dead" track and of the path on the east of the main track was perfectly safe for pedestrians even when the train was passing on the main track.

Under the facts in the case, we think that the plaintiffs were not entitled to recover. Relatively to a trespasser upon its right of way, a railroad company has a right to run its trains at any rate of speed it may deem necessary, unless it has notice that persons are on the track, or should reasonably anticipate that persons will be there. There is no evidence that the employees of the company had any knowledge or notice that this was a place

frequently used as a thoroughfare by pedestrains. On the contrary, as we have seen, the engineer denied all such knowledge. But it was insisted that the paths along the right of way were sufficient to put the employees of the company on notice that the public used this place ; that the engineer ought, therefore, to have been cautious, in running over this part of the track, to have his train under control. A reading of the facts above stated will show that there was no path visible upon either railroad track. There was nothing to put the employees of the company upon notice that people ever used either track as a thoroughfare. Nor was the path along the east side of the right of way sufficient to put the employees of the company upon notice that any one would be *upon the track*. All the witnesses testified that persons could walk along this path without danger from a passing train. If the engineer had seen people walking in this path (which he denies), that would not have been sufficient to make it his duty to check his train and keep it under control when approaching this place. He would have known that people using this path and remaining in it would be in no danger from his train. Even where people are accustomed to use the track itself and a person is injured while so doing, he must show that the employees or agents of the company had notice that the track was so used. Failure of the company to forbid such a use of its track, when it has notice, is regarded as being in the nature of a license granted by the company, and in such case it must use ordinary care not to injure the persons to whom such license has been impliedly granted. But where the use of the right of way is without the permission or knowledge of the company's agents or employees and without notice to them, and where the character of the locality or surrounding circumstances are insufficient to put them on notice or anticipation, the company is under no duty to a trespasser, save not to injure him wilfully or wantonly, and not to run him down after having seen his danger. We think that in the present case there was nothing to put the employees upon notice or anticipation of the presence of any one on or near the track in a dangerous position. But, it is said, the company was negligent in not seeing the child and stopping the train. The plaintiffs contend that ordinary diligence would have required a lookout to be maintained, and that if the engineer had been looking out he could have seen the child. To

concede this would not strengthen the case for the plaintiffs. If the engineer had seen the child, he would have seen it in the path, in a safe place, squatting down and apparently waiting for the train to pass by. In the exercise of ordinary care the engineer need not have anticipated that the child would attempt to cross the track immediately in front of the engine. He was authorized to act on the belief that the child would remain there until the train had gone by. If a railroad company were required by law to slow its trains and run cautiously every time there was some one upon its right of way, the rapid transportation of passengers and of the commerce of the country would be virtually destroyed. The testimony in this case shows that there is a path alongside the track of this company from Atlanta to Toccoa, ninety-three miles. Would it be reasonable to hold that every time an engineer saw a person, even a child, on the right of way in this path, perfectly safe from harm from a passing train, he should stop or slow up his train? We think not. Could any engineer anticipate that a child would suddenly leave the path and jump in front of the engine? If the doctrine contended for be correct, a train should run slowly all the way from Atlanta to Toccoa.

It is said that in cases of this kind a child should be put upon a footing where at least as much diligence is required relatively to it as would be required where an animal is killed upon a railroad track by an engine or train of the company. Granting for the sake of argument that this is true, this court has never held, as far as I can remember or ascertain, that a railroad company is negligent in failing to slow up or check its trains when an animal is seen near the track in a place of safety. It has been ruled that when an engineer sees cattle on the track, or near the track and apparently approaching or about to go on the track, he should then check his train and endeavor to avoid killing the cattle. These rulings do not require that the train should be checked when the cattle are neither on the track nor apparently about to go upon it.

For these reasons we think that the verdicts for the plaintiffs below were without evidence to support them and that the judge erred in refusing new trials.

*Judgment in each case reversed. By five Justices.*