## KENDRICK *v.* SEABOARD AIR-LINE RAILWAY.

A railroad company owes to a trespasser walking upon its tracks the duty not to hurt him wilfully, or negligently after his presence becomes known to its servants in charge of one of its trains.

In view of the presumption of negligence raised by law against the defendant company, the evidence introduced in behalf of the plaintiff was such as, if not overcome by evidence showing due diligence on the part of the company, would authorize a recovery by the plaintiff; and accordingly it was error to grant a nonsuit.

Argued December 13, 1904.—Decided January 28, 1905.

Action for damages. Before Judge Crisp. City court of Americus. June 25, 1904.

*Williams & Harper*, for plaintiff.
*E. A. Hawkins*, for defendant.

Evans, J.    Hozie Kendrick was killed by the running of the cars of the defendant railway company, and his widow sued for the value of his life.    On the trial the plaintiff offered evidence tending to show that the homicide occurred under the following circumstances:    The deceased lived near the city of Americus, and was going from his home to Americus, walking upon the railroad track.    When he had reached a point within the yards of the railway company near the coal chute, he was standing near the rail of the main line, watching a freight-train which was moving in his direction with considerable noise.    While thus engaged he was struck by an engine running backwards on the main line, and knocked about ten feet in advance of the engine and then run over by it.    The switchman testified he was riding on the footboard of the engine which killed the plaintiff's husband; that the engine was running backwards at a speed of seven or eight miles per hour, and that within about seventy-five yards of the place of the catastrophe he observed something on the track, and when the engine approached to forty yards of the place he recognized the object to be a man.    He immediately gave a signal to stop, but, as he was standing on the footboard of the tender on the fireman's side, the signal was not seen by the engineer.    The deceased was looking at the freight-train, which was coming from the east on a parallel track.    When the engine was about three feet from the deceased, he turned his head and apparently observed his danger and attempted to get off the track.    Just at this time the freight-train, which was going in an opposite direction with the engine, was passing the place where the deceased was standing.    As soon as the deceased was struck by the engine, the switchman gave a signal of distress, which was answered by the engineer with a blast of the whistle, and the engine was stopped.    The engine was equipped with steam brake, but no brake was applied until after the engine struck deceased.    By applying the brakes the engine could have been stopped in about ten yards at the rate of speed it was running.    The homicide occurred about half past six o'clock in the month of December.    At the time and prior to striking plaintiff's husband the bell on the engine was ringing.    Another witness testified that he had frequently used the railroad track through the yard in walking to and from Americus, and had seen other people "going back-

wards and forwards there sometime." Upon the conclusion of the plaintiff's evidence she was nonsuited, and the bill of exceptions complains of the grant of the nonsuit.

The plaintiff's husband was walking down the track of the railway company at the time he was killed by the running of the cars. The proof that one pedestrian may have frequently, and others occasionally, used the railroad track in the company's yards as a footpath is insufficient to establish an implied license to pedestrians to use the track. See *Grady* v. *Railroad Co.*, 112 *Ga.* 668. The plaintiff's husband at the time of his death was therefore a trespasser. The general rule is, that, " as to a trespasser walking upon the track of a railroad, the duty of observing ordinary care and diligence for his protection does not devolve upon the company's servants in charge of a train until his presence upon the track becomes known to them." *Hambright* v. *Railroad Co.*, 112 *Ga.* 36. When the plaintiff proved that the switchman knew her husband was upon the track, then the burden was on the railway company to show that the death could not have been averted by the exercise of proper care. The company owed the deceased no duty except not to hurt him wilfully or negligently after his presence became known to its servants in the operation of the locomotive. *Grady* v. *Railroad Co.*, supra. But when the company was charged with knowledge of the presence of a trespasser on its track, it immediately owed the trespasser the duty of exercising ordinary care and diligence to prevent any injury to him. The signal of the switchman was not heeded. The conclusion of the switchman was that the signal could not have been observed by the engineer because of his location on the footboard of the tender. Let this be granted. The record does not disclose whether or not there was a fireman on the engine. If there was a fireman, and he had been on his box, he probably would have observed the signal; and if he did observe it, his duty would have been to have acted with reference thereto. Assuming there was a fireman, the evidence is silent as to his position or his knowledge of the signal. He may have been engaged in other duties which would have prevented him from seeing the signal, but this did not appear from the evidence. If there was no fireman, then it would become a question as to whether the switchman exercised due care in placing himself on

the footboard of the engine so that his signals could not be seen by the engineer. The plaintiff's evidence, establishing a duty on the part of the railroad's servants to exercise ordinary diligence in avoiding any injury to the person of the plaintiff's husband, and the factum of the injury by the operation of the engine, was sufficient to raise the presumption of negligence against the company. Civil Code, § 2321. Of course the defendant might show that due care was exercised, so as to rebut the presumption, but until that was done the plaintiff's right to recover existed. The court should have submitted the case to the jury for them to determine whether the defendant's servants exercised ordinary care after the presence of the deceased on the track became known to its servants, or whether under all the circumstances of the case the killing of the plaintiff's husband was wanton or wilful.        *        *Judgment reversed.    All the Justices concur.*