ATLANTIC COAST LINE RAILROAD COMPANY *v.* FULFORD.

BECK, P. J. 1-2. The general rule is that a railroad company owes to a trespasser walking upon its track the duty not to injure him wilfully or negligently after his presence becomes known to its servants in charge of the train; but it owes to such trespasser no duty of protection until his presence is actually discovered by its servants. *Southern Ry. Co.* v. *Eubanks,* 117 *Ga.* 217 (43 S. E. 487); *Kendrick* v. *Seaboard Air-Line Ry.,* 121 *Ga.* 775 (49 S. E. 762). And this was the rule as to the duty owed by a railroad company to trespassers upon any portion of its tracks until the passage of an act approved August 19, 1918, entitled "An act to further regulate the running and operation of railroads in this State," etc. (Ga. Laws 1918, p. 212.) This act repeals sections 2675, 2676, and 2677 of the Code of this State, which contained the former blow-post law requiring the erection of blow-posts, and which also provided penalties for the failure to blow the whistle of the engine within stated distances of a railroad-crossing. But while the act of 1918 referred to above does not change the character of the act of a person walking on the railroad-track without permission or license and not at a crossing, it does impose, in sections 2 and 4 of the act, upon the engineer operating a locomotive engine of a railroad-train moving over the track of such railroad, the duty to blow

the whistle of the engine in the manner prescribed in the act, and in addition thereto it makes it the duty of the engineer while approaching the crossing to maintain a constant and vigilant lookout along the track ahead of the engine and to otherwise exercise due care in approaching the crossing, in order to avoid doing injury to any person or property which may be on the crossing or upon the line of railway at any point within fifty feet of such crossing. Though the person upon the line of the railway, not on the crossing, at a point within fifty feet of the crossing, if there without license or permission, would be a trespasser, nevertheless the duty would be on the engineer to maintain a lookout and exercise due care not to injure him. But the fact that a new duty as to a trespasser is, by the act of 1918, imposed upon the engineer to exercise care not to injure a person on the railway track, that does not relieve the person on the railway track of the character of a trespasser, if, prior to the passage of the act, he would have been a trespasser on account of being on the track. The failure to exercise the degree of care imposed by the act would be negligence. The foregoing answers also the second question, which in substance is the same as the first question stated in different language.

3. The court is of the opinion that the decedent referred to in the third question, under the circumstances there set forth, was guilty of such negligence as would bar a recovery for his homicide, it being assumed that there was no "wilful or wanton misconduct" on the part of the servants of the defendant company. This answer to the question propounded is clearly deducible from the principles stated in the case of *Lowe* v. *Payne*, 156 *Ga.* 312 (118 S. E. 924), and the decisions in the cases there cited in support of the doctrine laid down. Among the cases cited, attention is called especially to the case of *Moore* v. *Southern Railway Co.*, 136 *Ga.* 872 (72 S. E. 403), and the Georgia cases upon which the decision in the last-cited case is based.

4. The answer to the last preceding question would necessarily and a fortiori be the same where it appears, affirmatively or by necessary inference from the averments of the petition, that the decedent was, at the time of the homicide, aware of the train's schedule, and that the train which killed him was running on schedule time.

5. The decedent being at the time of the homicide an adult possessed of normal mental and physical faculties, though he was prevented by noises in the vicinity from hearing the train which approached him from the rear, could and should have exercised the faculty of sight, by which he would have ascertained upon merely turning his head that the train was approaching. He knew that he was in a place of danger when walking longitudinally along the track, and knew that there were noises there which interfered with his hearing, and consequently the slightest degree of care upon his part would have required him to look in the direction from which the danger might come, and a failure to exercise this care was such gross neglect upon the part of the decedent as to bar a recovery for his death.

6. We know of no rule of evidence which would authorize the court to hold that one walking upon a railroad-track under the circumstances stated in the questions is presumed to have knowledge of the schedule of the freight or passenger-trains which run over such track.

7. Nor do we know of any rule raising the presumption that a passenger-train operated in this State by a railway company is presumed to be run on schedule time.

8. The answer contained in the fourth division would necessarily be the same if it should appear that the person killed knew the schedule of the train that struck him, and that the train was running on time.

No. 4337. FEBRUARY 20, 1925.

The Court of Appeals (in Case No. 15315) propounded the following questions:

1. Is the violation by a railroad company of the provisions of either section 2 or section 4 of the act of the General Assembly approved August 19, 1918 (Ga. Laws 1918, p. 212), regulating the operation of railroad-trains in approaching public crossings, negligence as to one who, not being aware of the approach of one of the company's trains, is walking in front of it and in the same direction, longitudinally upon the railroad-track within 50 feet of a public crossing, but at a place where, without the provisions of the act, he would be a trespasser?

2. In other words, does the language, "any person or property which may be on such crossing or upon the line of said railway at any point within 50 feet of such crossing," as contained in section 2 of the above-mentioned act, or the language, "persons or property which might be upon such railroad-crossing, or upon the line of said railroad within 50 feet of such crossing," as contained in section 4, include one walking longitudinally upon the railroad-track at a point within 50 feet of a public crossing, but at a point where, without the provisions of the act, he would be a trespasser?

3. Where, in an action for the homicide of a person killed by the running of the locomotive and cars of a railroad company, it is alleged, or necessarily to be inferred, that the decedent when struck by the train was walking in front of it and in the same direction, along a path running parallel with the railroad-track and "located so near the iron rails . . over which the defendant company's locomotive and train moved as to make it impossible for a locomotive and train to pass along said iron rails without striking" him, that when struck he "had reached a point within 40 feet of" a public street crossing, that he did not at any time look to see if a train was approaching, and that he was an adult of normal physical and mental faculties, but was prevented from hearing the approaching train by noises of other locomotives, machinery, and

the like, in the vicinity, could it be held from these facts, as a matter of law, on demurrer to the petition, that the decedent was guilty of such negligence or failure of care as would bar a recovery for his homicide, no other reasons appearing for his conduct, and assuming the defendant's negligence, but no wilful or wanton misconduct on its part? Would the answer to the preceding question No. 3 be the same, if, in addition to the facts therein stated, it should be necessarily inferred, from the averments of the petition, that the decedent was at the time aware of the train's schedule and that the train that killed him was running on schedule time?

4. Where an adult possessed of normal mental and physical faculties, without looking to see if a train should be approaching, walked longitudinally upon a railroad-track within 50 feet of a public crossing in the daytime, and was prevented by other noises in the vicinity from hearing the noise of a train which approached him from the rear and struck and injured him, no other reason appearing from his conduct, and he having had no actual knowledge of the approach of the train, and where these facts are considered on demurrer to a suit in which they are alleged, does such conduct on his part, as a matter of law, constitute negligence amounting to a failure to exercise ordinary care to avoid a danger of which he knew or should have known?

5. Is one walking upon a railroad-track within 50 feet of a public street crossing in the daytime, which track is regularly used by the railroad company owning or possessing the same for the operation of trains (when such facts are considered on demurrer to a suit in which they are averred), presumed to have knowledge of the schedule of the trains run over such track, in the absence of anything to the contrary?

6. Is one walking upon a railroad-track within 50 feet of a public street crossing in the daytime, which track is regularly used by the railroad company owning or possessing the same for the operation of trains (when such facts are considered on demurrer to a suit in which they are averred), presumed to have knowledge of the schedules of the passenger-trains run over such track, in the absence of anything to the contrary?

7. Is a passenger train operated in this State by an incorporated railway company presumed to be run on schedule time, nothing appearing to the contrary?

8.   Would the answer to question No. 4 be the same, if, in addition to the facts therein stated, it should appear that the person knew the schedule of the train that injured him, and that the train was running on time?

*J. H. Merrill, H. H. Merry,* and *Bennel & Branch,* for plaintiff in error.

*Eldon L. Joiner,* contra.