DECIDED JANUARY 24, 1934.

*P. M. Anderson,* for plaintiff.
*E. C. Elmore, O. C. Darsey,* for defendant.

### 23124. YARBROUGH *v.* GEORGIA RAILROAD AND BANKING COMPANY.

DECIDED JANUARY 24, 1934.

*Craighead & Craighead, Dwyer & Dwyer, Joseph P. Brown,* for plaintiff.

*Noel P. Park, Miles W. Lewis,* for defendant.

JENKINS, P. J. 1. The Supreme Court in transferring this cause to this court has ruled that no constitutional question is presented by the record. *Yarbrough* v. *Ga. R. Co.,* 176 *Ga.* 780 (168 S. E. 873).

2. Where a railroad company blocks with its cars a crossing on a public highway for a needless or unreasonable length of time, a pedestrian, after waiting a reasonable time for such cars to be removed, may turn aside to avoid the obstruction, and pass over property of the company without being a trespasser in so doing. In such a case the questions as to the reasonableness of the time of blocking and waiting, and whether the company owed to the pedestrian the duty, under the facts and circumstances, of anticipating his presence, and the diligence due and exercised by the company for his safety, as well as his own diligence to avoid danger and injury, are all ordinarily for the determination of the jury, and not for solution on demurrer. *Smith* v. *Savannah, Florida & Western Ry. Co.,* 84 *Ga.* 698, 704-706 (11 S. E. 455) ; *Central of Ga. Ry. Co.* v. *Owen,* 121 *Ga.* 220, 222 (48 S. E. 916) ; *Savannah, Fla. &c. Ry. Co.* v. *Hatcher,* 115 *Ga.* 379, 380 (41 S. E. 606)'. Thus, while it has been held by this court (following *Lowe* v. *Payne,* 156 *Ga.* 312, 118 S. E. 924, and *Atlantic Coast Line R. Co.* v. *Fulford,* 159 *Ga.* 812, 127 S. E. 274), with respect to a trespasser, that "The mere failure of the employees of a railway company to discover the presence of a trespasser at a place where and a time when it was their duty to anticipate the presence of trespassers, and thereafter to take such needful and proper measures for his protection as ordinary care might require, might amount to a lack of ordinary care, but would not, in and of itself, amount to wilful and wanton misconduct" such as would authorize a recovery (*Hammontree* v. *So. Ry. Co.,* 45 *Ga. App.* 728, 165 S. E. 913). The prin-

316

ciple stated in the *Hammontree* case is not applicable where, as here, the jury might be authorized to find that, under the special facts pleaded, the decedent was not a trespasser. It would be for the jury to determine whether, under any evidence tending to show that many persons were accustomed to walk along or over the track at the point where the injury occurred, as alleged in the petition, taken in connection with any other testimony as to the reason for the presence of the deceased at the time and place of the homicide, the servants of the railroad company were under a special duty to anticipate his presence, and exercised ordinary care and diligence to prevent the injury.

· 3. The imposition of such a duty on the railroad company would not, however, relieve the person going on its tracks from the duty of exercising ordinary care for his own safety; and the question whether he has exercised such diligence is also, except in a plain and indisputable case, for determination by the jury. *Wright* v. *So. Ry. Co.,* 139 *Ga.* 448, 450 (77 S. E. 384) ; *Central of Ga. Ry. Co.* v. *Tapley,* 145 *Ga.* 792 (3, 4) (89 S. E. 841) ; *Pope* v. *Seaboard Air-Line Ry.,* 21 *Ga. App.* 251 (94 S. E. 311). See also the recent case of *Central of Ga. Ry. Co.* v. *Stamps,* 48 *Ga. App.* 309.

4. Under the preceding rulings, it can not be held as a matter of law, on demurrer, that the plaintiff's son, who was killed by a train of the defendant, was a trespasser, or that the defendant did not owe to him the duty of exercising ordinary care in anticipating his presence and in not injuring him, where, under the allegations of the petition, the defendant's train had blocked a public crossing for 15 or 20 minutes, and the deceased, after waiting 10 minutes for the crossing to·be cleared, walked around the train on the defendant's property to the place where he was killed, in a populous section of the city between two public crossings, and on a passageway which it is charged had been regularly and commonly frequented and traveled by the general public over a long period of time, both day and night, to the knowledge of the defendant's agents and employees, and where the engineer of the train was asked by the deceased immediately. before the homicide whether "a person would have time to go around said cars and cab on said main line . . before they were ready to pull out, and said engineer replied he didn't know, that he was waiting for orders for switching." These allegations, if supported by testimony, sufficed to raise a jury ques-

tion, both as to whether the defendant, under all the evidence, owed to the deceased the duty of exercising ordinary care in anticipating his presence, and if so, thereafter used ordinary care in preventing his injury, and also as to whether the defendant was himself guilty of a lack of ordinary care such as would prevent a recovery. The petition does not merely allege generally that the deceased was guilty of no negligence and exercised all ordinary care, but specifically charges that the homicide occurred at night at a place where box-cars on a side-track prevented electric street-lamps from throwing a light to the main-line track where he was struck, and that other lights "so blinded the vision of decedent . . that he was unable to see said boxes and engine as they noiselessly came down said steep grade and struck decedent," without any signal or warning whatever of danger, that the place of the homicide "was not within a switchyard and was not in any way inclosed by defendant," and that he was "looking and listening for the movement of cars . . and, not seeing or hearing any moving cars or engine" as he "started to cross said main line," "was suddenly struck and run over on said main-line tracks by the end of the box-cars attached to said engine that were rolling down a heavy grade to couple with said box-cars on said main-line track." It was therefore error to sustain the general demurrer. The court having withheld a decision on the special demurrers, the judgment must be reversed, with direction that the questions remaining undecided on the pleadings be determined.

*Judgment reversed. Stephens and Sutton, JJ. concur.*