24267. COLLETT *v.* ATLANTA, BIRMINGHAM AND COAST RAILROAD COMPANY.

DECIDED AUGUST 15, 1935.

*John J. Neely, R. A. McGraw,* for plaintiff.
*Atkinson & Allen, Lovejoy & Mayer,* for defendant.

MacIntyre, J. Mrs. A. E. Collett filed suit against the defendant railroad company, asking for damages on account of the death of her husband, alleged to have been caused by the negligent operation of one of its passenger-trains. Petitioner's action as amended was stated in two counts. The first count, after making the usual allegations as to jurisdiction, alleged that the "husband of the petitioner was struck and killed by a locomotive and train being operated and belonging to the defendant," and that the accident occurred on May 21, 1933, "at or near four o'clock a. m. at night;" that "husband of petitioner was struck as aforesaid and killed on and at a public crossing . . within the corporate limits of the city of Manchester, said public crossing being where Franklin street, a public street, and leading thoroughfare of the city of Manchester, passes over and across the line and railroad track of the defendant;" that "said locomotive and train was being operated and was being run at a high, dangerous, reckless, and negligent rate of speed, at the rate of speed of from 35 to 45 miles per hour as the same approached said crossing, and advanced upon and passed over said crossing, and at the time such locomotive and train struck and killed the husband of petitioner;" that the agents and servants of the defendant in charge of the train and the engineer "failed to ring and failed to toll the bell on same as it approached and went upon said public street and crossing as aforesaid, and same did approach and did go upon said crossing within the corporate limits of said city of Manchester without ringing and tolling the bell and without giving warning of its approach;" that said engineer failed to keep and maintain a constant and vigilant lookout along the track ahead of said engine as it approached the crossing; that said engineer and agents and servants of said defendant failed to have said train under proper control when approaching said crossing in order to avoid doing injury to persons or property on said public crossing or within fifty feet of said crossing; that "the night was dark and smoky," and that at said crossing the city of Manchester maintained an electric-light twenty-five feet above ground for the purpose of shedding light on said Franklin street at the crossing, and that on account of the darkness and smoke and on account of the electric light, "it was impossible for said husband of petitioner to know that any train was approaching as he approached and walked on same," and that "when he entered upon said public

crossing in said Franklin street the aforesaid passenger-train of the defendant came suddenly upon her husband . . without warning or notice of its approach and running at said high and negligent and reckless rate of speed as aforesaid, and struck her said husband while he was on said crossing en route to his home and before he could avoid being struck by said engine and train and while endeavoring to avoid being struck, and when he was so struck he was thrown, knocked, hit, and dragged approximately twenty yards along said track;" that said engineer had no objects in the way to obscure his view or sight of her said husband, and that he could have seen her husband as he approached and entered upon said public crossing for more than one thousand feet before the engine arrived at said crossing if he had used due care in keeping a vigilant lookout ahead; and that by reason of the above acts of negligence the defendant company was liable to her in a named sum.

The second count was to the effect that deceased was struck at a point near Franklin street as it crossed defendant's tracks, "and within 150 feet of said crossing;" that the point where deceased was struck was a place "where many people use same day and night." The substantial allegations of negligence in the first count are contained in the second count.

The case proceeded to trial. Plaintiff introduced evidence, and, upon motion of defendant at the close of plaintiff's evidence, the court granted a nonsuit. As we view the case the grant of a nonsuit was proper for two reasons: First, that the evidence for the plaintiff failed entirely to support the substantial allegations of the petition, and, second, that it is apparent from the testimony, giving plaintiff every benefit of doubt, that the deceased, by the use of ordinary care, could have avoided the consequences of the defendant's negligence. The evidence tended to show that on the morning of May 21, 1933, the deceased was found by his wife in a coal-house behind his residence with a number of wounds on his head. This was sometime in the early morning. He was not dead, but was unconscious. The railroad-track of defendant ran north and south to the side of the home of the plaintiff, the residence being some 175 feet from the Franklin-street crossing. The coal-house in which the deceased was found was located between the tracks and his residence. The distance from his residence to the railroad-track was some 200 or more feet, and the coal-house was some 30

feet from the railroad-track. Plaintiff's testimony was that her husband was not at home during the particular Saturday night in question; that she did not see him from Saturday afternoon until he was found Sunday morning. Deceased when found had lacerations on his head and breast and had bled considerably about the head. Cinders and trash were found in some of the wounds. Jewel Collett testified that after she found her father in the coalhouse, she "found a large puddle of blood up on the railroad; . . the puddle of blood was on the side of the railroad-track next to my house. I also found a cigarette there and it was in the blood." Testifying as to the distance from the crossing where the pool of blood was located, she said, "I would say about 60 or 70 feet from the crossing. I only saw one pool of blood." James Anderson testified, that he went up to the railroad, which was on a fill, and found two puddles of blood, Collett's cap, and some money. One puddle of blood was about 3 feet from the rails and one puddle of blood about 5 feet from the rails. The cap was 17 feet north from the pool of blood, away from the crossing. He measured the distance from Franklin-street crossing to the pool of blood, and it was 145 feet north of the crossing. He further testified that he found between the coal-house and the railroad where somebody had slid down the fill, from the pool of blood that was going from the track to the coal-house. With reference to the operations of the train, Mrs. E. W. Jones testified, that she left Manchester on the train between three and four o'clock for Atlanta; that after leaving the city the train had to cross Franklin street; that the whistle of the train was blown after the train was upon Franklin-street crossing; that she did not hear any bell being rung or any other warning given except as above testified to, and that the train was moving very fast, and that the engineer could see about 500 yards down the track before it reached the crossing. Mrs. Collett testified that she estimated the speed of the train to be 30 or 40 miles per hour. This was substantially the testimony relied upon by plaintiff for a recovery.

The plaintiff's petition was based upon the theory that her husband was at the time of his injuries a user of a public street crossing the tracks of defendant railroad company, at a place where he had a right to be, and that the defendant company failed to exercise duties owed to him as such, such as failing to give warning by

ringing a bell or blowing a whistle and failing to keep a vigilant lookout ahead in approaching said crossing and keeping said train under control so as to avoid injury to anyone using said crossing. After a careful consideration of the evidence, we do not think the evidence sufficient to sustain these allegations. It may be stated, first, that the evidence was perhaps sufficient for the jury to have found that the death of the plaintiff's husband was caused by being struck by the train of the defendant. However, there is no testimony that shows or tends to show that the deceased was using the crossing at the time of his injuries, but the evidence is rather that he was some distance from the crossing at the time he was injured, and sustained no better relationship to the railroad than that of a trespasser. The pools of blood found near the track were shown to have been some 145 feet from the crossing. There was no indication whatsoever that the plaintiff was struck at the crossing and knocked or dragged this distance, nor is there any indication that the deceased was ever at the crossing. Plaintiff's contention that the jury could have concluded this fact is not supported by evidence and would be a pure conjecture. Even though it might be true that the deceased was struck while using the crossing, there is no evidence of this fact, "and liability can not be imposed merely because the actual circumstances are incapable of proof. It is more consistent with legal justice that a given case should fail for want of evidence than that it should succeed merely because the truth can not be shown." *Savannah River Lumber Co.* v. *Bush, 37 Ga. App.* 539, 541 (140 S. E. 899). Taking the evidence, therefore, it would appear that if the plaintiff was struck by the defendant's train, it was some distance from the crossing, and that he sustained no better relationship to the railroad than that of a trespasser. The general rule is that a railroad company owes to a trespasser, walking upon its tracks, the duty not to injure him wilfully or wantonly after his presence is known to its servants in charge of the train; but this duty is not active until his presence is actually known. *Pressley* v. *A. & W. P. Railroad Co.,* 48 *Ga. App.* 382, 384 (172 S. E. 731). There were no allegations of wilful and wanton negligence, nor is there any proof of the same. Under these circumstances, proof by the plaintiff that the injuries were caused by the running of the train would not make out a prima facie case against the defendant, for he was at a place where the defendant owed him

no duty until after he was discovered, and there is no evidence showing this fact. See, in this connection, *Motz* v. *Central of Ga. Ry. Co.,* 132 *Ga.* 350 (64 S. E. 79). There is no proof that the point approximately where the deceased was found was a place where the railroad should have anticipated his presence, so as to charge the servants of the railroad with the duty of looking out for any persons who might be on or near the track. Furthermore, it appears that the deceased by the exercise of ordinary care could have avoided the injuries caused by the alleged negligence of the defendant. According to the testimony, the deceased was in good health and was in the possession of all of his physical and mental faculties, and could have seen the train 500 yards distant from the crossing had he looked. There was no proof that the electric-light above the crossing was burning, nor was there any proof that the night was dark and smoky. There was no proof that the head-light of the train was not burning, and the testimony would show that the train was making the usual noises. The evidence would indicate that if Collett was struck by a train he was either in a sitting or reclining position. There were wounds upon his head and the upper part of his body, and there were no wounds testified to as having been inflicted upon the lower part of his body. However, in either instance, whether standing and walking upon the track or sitting and lying upon the track, or whether at the time he was struck he was within fifty feet of the crossing but not a user thereof, so as to make the statute with reference to ringing of the bell, etc., by the engineer upon approaching a crossing applicable to him even though a trespasser, the cases are numerous to the effect that no recovery can be had under such circumstances, because of his own failure to exercise ordinary care. See *Lowe* v. *Paine,* 156 *Ga.* 312 (118 S. E. 924) ; *Atlantic Coast Line Railroad Co.* v. *Fulford,* 159 *Ga.* 812 (127 S. E. 274), and cit.

From what has been said, we think that there was no error in the judgment of the trial court in granting a nonsuit.

*Judgment affirmed.    Broyles, C. J., and Guerry, J., concur.*