1778.  LOUISVILLE AND NASHVILLE RAILROAD COMPANY *v.* PLUNKETT.

1.  The quantum of care which should be exercised toward a trespasser is to refrain from wilfully or wantonly injuring him, or (which is the same thing) to use ordinary care to protect him from injury after his presence is discovered. The question as to whether the employees of the railroad used this degree of care toward the plaintiff's husband was for the jury.
2.  Even though a trespasser is negligent, his negligence will not bar a recovery, where the evidence authorizes the finding that a violation of the duty to use ordinary care, to avoid injuring him after his presence is known, is the proximate cause of his injury.

Action for damages, from city court of Sparta—Judge Little. February 25, 1909.

Argued May 6,—Decided October 5, 1909.

*Joseph B. & Bryan Cumming, W. H. Burwell,* for plaintiff in error.

*Napier & Maynard, R. L. Berner, R. L. Merritt,* contra.

RUSSELL, J. Mrs. J. C. Plunkett sued the railroad company for the homicide of her husband, and recovered a verdict. The defendant excepts to the overruling of a motion for a new trial, containing only the general grounds. The deceased was a passenger from Macon to Mayfield on the defendant's railroad, and when his destination was reached he was so intoxicated that it was necessary for him to be bodily removed from the train. He was placed on some grass about 35 feet from the track, on the right of way, on the same side of the track as the station, near a path leading from the station to the public highway. Just as the train was moving off from the station the deceased arose from the ground, and attempted to board the train. He caught hold of the handrails between the two cars and, in attempting to pull himself up on the platform, missed the step, and fell in such a way that he was dragged for about 100 feet with his hands clinging to the handrails and his body swinging between the two cars, when he lost his hold and fell, and was run over by the wheels of the rear car of the train, receiving the injuries from which death resulted.

There is a great deal of conflict in the testimony as to the exact time when the deceased's presence became known to the train employees. Certain eye-witnesses standing near the scene of the injury testified that the deceased was seen by the employees as he was approaching the train, and also after he was hanging between the cars, and that they made no effort to extricate him or to stop the train until after he lost his hold and fell. This was squarely contradicted by the employees; they stating that he was not discovered until he was actually hanging between the cars; and that then it was too late to stop the train so as to avoid injuring him, although every effort was made to do so. The train was equipped with two kinds of apparatus for stopping it,—the ordinary signal which was given by pulling the bell-cord, and an emergency brake.

The service signal communicated with the engineer and instructed him to apply the brakes; while the emergency brake was operated directly by pulling a lever or a cord inside the car. At the time of the injury the train was running at the rate of two miles an hour, on a level track; and under such circumstances, the ordinary service signal would stop it in from twelve to fourteen feet, while the emergency brake would stop it in from six to eight feet. The only signal given was the ordinary service signal. The employees stated that the reason the emergency brake was not applied was that it was so situated that it could not be reached as quickly as the other signal. It appears that the baggage-master (who is also called the flagman) was standing in the door of his car; that he saw the deceased before he fell; and that the lever by which the emergency brake was applied was on the opposite side of the car, about six feet from him. Only a few seconds intervened, after the deceased missed the step and was hanging between the cars, before he was injured.

It is frankly conceded by the defendant in error that at the time of the injury the deceased was a trespasser, and that the only duty of the railroad company was to avoid injuring him wilfully or wantonly, or (which is the same thing) to use ordinary care and diligence to avoid injuring him after his presence had been discovered. It is now well settled that this is the quantum of care due to trespassers in cases of this kind. *Charleston, etc., Ry. Co.* v. *Johnson,* 1 *Ga. App.* 441 (57 S. E. 1046); *Forrest* v. *Georgia R. Co.,* 128 *Ga.* 77 (57 S. E. 98); *Western & Atlantic R. Co.* v. *Bailey,* 105 *Ga.* 100 (31 S. E. 547); *Southern Ry. Co.* v. *Chatman,* 124 *Ga.* 1026 (53 S. E. 692, 6 L. R. A. (N. S.) 283). The fact that the trespasser is in an intoxicated condition does not in any sense lessen the quantum of care owing to him after his presence becomes known. *Forrest* v. *Georgia R. Co.,* supra; *Rollestone* v. *Cassirer,* 3 *Ga. App.* 161 (2, c), (59 S. E. 442). Under the evidence in this case, it was a question for the jury as to whether or not the railroad company, through its employees, exercised ordinary care and diligence to prevent injury to the deceased after his presence had become known to them. According to the evidence in behalf of the plaintiff, he was seen by the employees as he was approaching the train, and also after he was hanging between the cars, and no effort was made to extricate him or to

stop the train, until after his hands slipped and he fell; and then only the ordinary service signal was used, when an emergency brake was near at hand which would have stopped the train in almost half the distance. It was argued by the learned counsel for the railroad company that when due consideration is given to the quickness with which the different events took place, and the almost paralyzing effect upon one's mental and physical action when a condition of extreme peril exists, the employees can hardly be blamed for their failure to pull the emergency brake, when it appears that such method for stopping the train was hardly ever used. It is said, "Under certain conditions of extreme peril or mental disturbance, persons' actions are frequently automatic in following out the lines acquired by long habit. This train crew did, under these conditions, not what the exceptional man might have had the coolness and wit to do, but what the average individual would have done,—used the regular well-known method of stopping the train, which they were able to do automatically, without having to evolve, as it were, an entirely new idea out of their highly disturbed mental and nervous condition." The soundness of the doctrine urged by counsel is fully recognized by this court. See *Tuten* v. *Atlantic Coast Line R. Co.*, 4 *Ga. App.* 358 (61 S. E. 511), where it is said: "The law will take account of circumstances surrounding an act; and if those circumstances are such as to produce excitement and interfere with deliberation, the act is to be measured accordingly. It might be regarded as a rash thing to jump from a rapidly moving train even when a collision is imminent, and yet the excitement naturally produced by such an exigency might cause a prudent person to do the very thing which in our calmer moments we judge to be rash." And a phase of the same doctrine was applied by this court in the case of *King* v. *Seaboard Air. Line Railway*, 1 *Ga. App.* 88 (58 S. E. 252). But counsel do not correctly apply the doctrine to the facts of this case. An emergency brake is made to be used in an emergency, and the question as to whether or not it ought to be so used by a railroad employee whose duty calls upon him to use it when needed is a question for the jury. In view of the short interval of time—only a few seconds—between the discovery of the deceased in his perilous position and the injury which re-

sulted in his death, the use of the emergency brake instead of the ordinary service signal might have saved his life. At any rate, the jury had a right to say that it was negligence for the employees not to apply it.

It has also been ably argued before us that the deceased's own negligent act is the proximate cause of his injury,—first, in making himself intoxicated, and, secondly, in attempting to board the train while it was moving. It is argued that if the deceased had been sober when he attemped to board the train under the circumstances, he could not recover, because his own act would be regarded as the proximate cause of the injury; and that the deceased ought not to be in a more advantageous position because he was intoxicated. It is true that in weighing a person's conduct for the purpose of determining his negligence or contributory negligence, the state of mind produced by the intoxication will be disregarded, and he will be judged as if the conduct occurred while he was in the possession of his normal mental capacity. *Seaboard Air-Line Railway* v. *Chapman*, 4 *Ga. App.* 706 (62 S. E. 488). But counsel overlook the fact that under the inference which the jury could make from the evidence, the proximate cause of the injury was the failure of the employees to use ordinary care to keep from injuring the deceased after his presence had been discovered, and therefore the antecedent negligence of the trespasser, in the eye of the law, had no direct causal connection with the injury. If the deceased had been perfectly sober, and it had been negligent for him to attempt to board the train under the circumstances, if in fact he had made the attempt and the railroad employees had discovered him in a perilous position, the duty to use ordinary care and diligence to keep from injuring him immediately would have arisen, and a violation of this duty would be regarded as the proximate cause of the injury. Every trespasser is in a sense guilty of negligence of the grossest kind, and yet the negligence might not result in injury if other people use ordinary care and diligence toward him. In the words of Lord Bacon, "It were infinite for the law to judge of the cause of causes, and their impulsion one of another. Therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree." Maxims of the Law, Reg. 1. The case at bar calls for the appli-

cation of the doctrine of "the last clear chance." See Bogan v. Carolina Central R. Co., 129 N. C. 154 (39 S. E. 808, and especially the monographic note appended to the case as reported in 55 L. R. A. 418).

Trespassers are not a favored class in the law, but ordinary care and diligence must be used to avoid injuring them after their presence is discovered; and their antecedent negligence does not preclude them from complaining of a violation of this duty. "Even if the deceased might have been negligent at the time he stepped upon this track, still such negligence would not prevent a recovery by his widow in this case, if, after the deceased was put in a situation of peril and danger by being caught under the machinery of the car, the defendant's motorman could have saved his life by the exercise of ordinary care." *Atlanta Railway Co.* v. *Walker,* 112 *Ga.* 725 (38 S. E. 107). So in this case the negligence of the deceased in getting drunk and in attempting to board the moving train does not bar a recovery, under the plaintiff's evidence, since it appears that the jury was authorized to infer that after this negligence was known to the other party, ordinary care was not used to avoid injuring him.

*Judgment affirmed.*