## 2898.　SOUTHERN RAILWAY CO. *v.* WILEY.

Where a suit to recover damages was based on the theory of a wilful and wanton act, and a recovery was authorized only on that theory, it was error to instruct the jury in effect that the defendant would be liable on proof of negligent conduct alone.

DECIDED APRIL 24, 1911.

Action for damages; from city court of Hall county—Judge Looper.　July 29, 1910.

*C. R. Faulkner, Ed. Quillian, John J. Strickland,* for plaintiff in error.

*H. H. Dean,* contra.

HILL, C. J.　This is a suit to recover damages for the wanton and wilful killing of the plaintiff's husband. She recovered a verdict for $1,500, and the defendant's motion for a new trial was overruled.　The evidence is within a narrow compass, and briefly stated is as follows: The decedent, 60 years of age, was walking on the track of the railroad several hundred yards from a public crossing.　He was quite deaf, the wind was blowing at a high rate directly in his face as he walked, and a freight-train, running from 20 to 30 miles an hour, coming up behind, ran over and killed him.　The engineer saw him walking on the track at a distance of between 300 and 400 yards before he reached him.　There was a pathway on the side of the track for pedestrians, although pedestrians were in the habit of using the middle of the track at that place.　As to this point there is no conflict in the evidence. The plaintiff's witnesses testified that the engineer did not blow the whistle at the public crossing, about 300 yards from where the deceased was killed, and did not blow the whistle or ring the bell, or apparently make any effort to check the speed of the train, before reaching the decedent.

The engineer testified, that he did blow the whistle at the blow-post when approaching the crossing, some 300 yards from where the decedent was killed; that when he first saw the decedent walking on the track he assumed that he would get off the track before

the train reached him, but, realizing in a few seconds that the decedent did not intend to get off the track, he blew his whistle, put on the brakes, including the emergency brakes, and did all he could to stop the train, but that it was impossible to stop it in time to prevent the homicide. The other employees of the company substantially corroborate this testimony of the engineer, especially as to the signals which he gave and the efforts which he made to stop the train.

From the undisputed facts it is clear that the decedent was a trespasser, and that he was guilty of contributory negligence. As Chief Justice Bleckley says in the case of *Central Railroad Co.* v. *Smith,* 78 *Ga.* 698 (3 S. E. 398), as to somewhat similar facts: "It is manifest that plaintiff was out of his place at the time he was injured. Grant that the track was often used by persons to walk along it and there was no objection to such use, and that plaintiff was there by implied or tacit license, he was there under circumstances which required him to have all his senses on the alert for trains, and to get out of the way when any of them approached." Here, according to plaintiff's own language, as well as the allegations of the petition, the decedent "was quite deaf and very hard of hearing." It can not be questioned that for a person with this infirmity to walk on a railroad track, where many trains were running at all hours of the day, without constantly using his sense of sight to guard against the approach of a train, was negligence. Indeed, it is not denied that the decedent was a trespasser, or that he was guilty of contributory negligence; and the suit is based entirely on the theory that even though he was a trespasser, and guilty of contributory negligence, the railroad company is nevertheless liable for his death, because the killing was wilful and wanton. In other words, the suit is not one to recover damages due to the negligent conduct of the employees of the railroad company, which caused the death of the decedent. It was within its rights in the running of its cars at that place at the rate of speed that the evidence, even for the plaintiff, shows it was running; and as the decedent was some distance from the crossing, even if it had failed to obey the crossing law with reference to signals, this was not an act of negligence of itself, in so far as the decedent was concerned, and could only be considered as a circumstance, in connection with other facts, indicating negligence at

the place of the killing; and the engineer had the right to presume that the decedent, who apparently was capable of taking care of himself, would get out of the way of the approaching train. And while it may be true that, when the engineer first saw the decedent walking on the track, it may have been his duty, out of abundance of caution, to blow the whistle as a warning of approaching danger, yet, having no knowledge of the decedent's deficiency in his faculty of hearing, it was not unreasonable for him to assume that the sound of the running train would be sufficient to give warning of its approach, and his failure then to sound the whistle could only be considered, at most, as an act of negligence.

The recovery in this case, therefore, can be sustained only on the theory that the decedent was killed by the wilful and wanton conduct of the engineer; it being well settled that there can be a recovery for a wilful and wanton injury inflicted upon another, even though that other may be a trespasser or wrong-doer, and may be himself guilty of contributory negligence. 3 Elliott on Railroads, § 1253; *Central Railroad Co.* v. *Denson,* 84. *Ga.* 774 (11 S. E. 1039); *W. & A. Railroad Co.* v. *Bailey,* 105 *Ga.* 101 (31 S. E. 547); *Central Railroad Co.* v. *Brinson,* 70 *Ga.* 227. Was the engineer, under the facts, guilty of wilful and wanton conduct in killing the deceased? There is no evidence that he wilfully or intentionally killed him, or that his conduct was so reckless as to amount to wantonness; and, if he was guilty of wilfulness or wantonness, it arose from failure to use reasonable care to avoid injury to the deceased after discovering his danger; for, as was held in *Charleston &c. Railroad Co.* v. *Johnson,* 1 *Ga. App.* 441 (57 S. E. 1064), "a failure to exercise ordinary care to prevent injuring [a person] after his presence in a position of peril becomes known is usually so much akin to wantonness and wilfulness as to create liability." *De Vane* v. *Atlanta, B. & A. R. Co.,* 4 *Ga. App.* 140 (60 S. E. 1081). This is but the enunciation of the general rule on the subject. Elliott on Railroads, §§ 1253, 1257; *Central R. Co.* v. *Denson,* supra, and many cases there cited.

When did the engineer first see, or in the exercise of ordinary care could he have seen, the perilous position of the decedent? Clearly this situation was not perilous when he first saw him, for he was between 300 and 400 yards distant, and he had a right to presume, in the absence of knowledge of any physical deficiency in

the decedent, that he could hear the approaching train and would get off the track in time to prevent the homicide. The principle of law applicable to this case is tersely laid down in 2 Rorer on Railroads, § 1122, as follows: "At places other than crossings, or on public highways, a railroad track is the private property of the company, and no one other than the company's servants or employees, in the necessary discharge of duties there, has any right to be thereon, and more especially as to their using the same as a thoroughfare or pathway, on which to walk or travel. And though the company may not wantonly injure persons thus intruding upon and using the same, yet if the person be an adult, not known to those in charge of the train to be deficient in discretion, or in physical ability to take care of himself, or not known to be deficient in his faculty of hearing, and not in any way presenting indications of being disabled, or incapable of taking care for his safety, then the persons in charge of the train have a right to conclude, and to act on that conclusion, that such person is in possession of all his proper faculties to enable him to do so, and will leave the track in time to save himself from injury, and are not bound to stop or check up the train on his account." The learned author adds, however: "But as a matter of ordinary prudence and care, it is their duty to sound the whistle and ring the bell, as a warning of the approaching danger." This apt enunciation of the law has been approved by the Supreme Court in frequent decisions. *Central Railroad Co.* v. *Denson,* supra, and many cases there cited. In the *Denson* case the verdict was approved, because the facts in that case showed negligence per se in the failure to observe the blow-post law, and also strongly indicated such reckless conduct on the part of the engineer as amounted to wantonness.

Here the engineer testified that, as soon he saw the decedent on the track some 300 or 400 yards away, he sounded his whistle; but the jury were authorized, from the plaintiff's evidence, to infer that this was not true. The engineer further testified that, when he saw that the decedent did not show any indication of getting off the track, he again blew his whistle repeatedly, and at once put into operation every means at hand to check the running train in time to prevent the homicide. The evidence for the plaintiff would probably have authorized the jury to infer that he did not blow the whistle until after the homicide; but there is no evidence that

he did not endeavor by every means possible to check the rapid movement of the train when he realized the decedent's danger. Of course, under the facts of this case, in view of the undisputed evidence as to the decedent's deafness, the blowing of the whistle would have been ineffective, and the timely checking of the train was the only act of prudence that the engineer could have adopted to have been available in the emergency. The exact period of time in which ordinary diligence would have required him to discover that the decedent would not get off the track was necessarily largely a matter of judgment under the circumstances, and if he failed to exercise proper judgment in realizing when the exact moment of peril would begin, this failure certainly could not be counted against him as wilful or wanton, although it might have been charged against him as simple negligence. While we think the evidence in this case is exceedingly close on the question of liability, we are so reluctant to decide that the verdict of the jury on questions purely of fact is unsupported by any evidence, and therefore contrary to law, that we prefer to grant another trial on a specific error of law, if such is disclosed by the record.

In this case error of law appears in the charge of the court, when considered in the light of the evidence. Here was a suit based solely on the wilful and wanton conduct of the engineer in a failure to exercise ordinary prudence in reference to a trespasser on the track who was in a position of peril and whose position of peril was known to the engineer, or could have been known to him by the exercise of ordinary care. The learned trial judge failed in any part of his instructions to restrict the right of recovery to the evidence of wilful and wanton conduct on the part of the engineer, but distinctly instructed the jury that they would be authorized to find a verdict against the railroad company, if they found from the evidence that the defendant's employees were guilty of negligence in causing the homicide of the decedent. He several times instructed them that if the engineer, after he discovered the decedent on the track, continued the operation of the train at full speed, without sounding any alarm or making any effort to prevent the killing, they would be authorized to find that the defendant was negligent, and was therefore liable. Here the decedent was an admitted trespasser. The railroad company owed him no duty until his position of peril was discovered on the track.

His position of peril did not arise as soon as the engineer saw. him on the track, for he was then several hundred yards distant, and the engineer had the right to assume that he would get off the track in time to prevent the accident. The duty of diligence to the trespasser arose only when the engineer saw that he did not intend to get off the track. The repeated instructions of the judge that the engineer, in the exercise of ordinary diligence, should have done all he could do to prevent the injury as soon as he discovered the decedent walking on the track, or the railroad company would be liable for negligence, was not the enunciation of a correct principle of law as applicable to the facts of this case. In other words, the suit was based on the theory of a wilful and wanton killing, and a recovery was authorized only on that theory. The charge of the court allowed a verdict against the railroad company if the engineer was only negligent.

The assignments of error made in the motion for a new trial complain of the presentation of this theory of the case in the charge, and we think this objection is well founded, and, in view of the very close character of the evidence on the question of liability, we are constrained for this reason to hold that the court below erred in refusing to grant a new trial.

*Judgment reversed.*