22956, 23028.  PRESSLEY et al. v. ATLANTA & WEST
POINT RAILROAD COMPANY; and vice versa.

DECIDED FEBRUARY 2, 1934.

Duke Davis, H. C. Harrison, Hewlett & Dennis, for plaintiff.
Howell, Heyman & Bolding, R. W. Martin, M. U. Mooty, for defendant.

MacINTYRE, J.  John Pressley, for himself and his children, sued the Atlanta and West Point Railroad Company for the homicide of his wife and their mother.  The petition was brought in two counts.  The first count was based on the lack of ordinary care on the part of the defendant, that is, ordinary negligence, in running over and killing the deceased.  This count was dismissed on general demurrer.  The second count purported to be based on alleged wilful and wanton negligence on the part of the engineer of the defendant.  The defendant filed a general demurrer to the second count, and also filed certain special demurrers; and after amendment to meet some of the grounds of the special demurrers, the court overruled the demurrers, to which ruling the defendant excepted.  The case proceeded to trial under the second count, and at the close of the evidence the judge granted a nonsuit.  The plaintiff excepted.

The sustaining of the demurrer to the first count, we think, was proper.  The general rule is " (1) If a homicide occurs at a place upon the track of a railway company, where it was the duty

of the servants of the company to anticipate the presence of persons on the track, and their failure to so anticipate the presence of others thereon amounts to mere negligence, the negligence of the person killed, under such circumstances, amounting to the lack of ordinary care for his safety, and where the person killed could by the exercise of ordinary care have avoided the consequences to himself of such negligence of the servants of the company, will prevent a recovery by a plaintiff who sues for such homicide. (2) But if the servants of the company were guilty of wilful and wanton negligence, which resulted in the homicide of the person killed, then the negligence of the person killed, however gross, will not defeat a recovery of damages for such homicide by a plaintiff who is entitled under the law to sue therefor." *Lowe* v. *Payne,* 156 *Ga.* 312 (118 S. E. 924). In *Atlantic Coast Line R. Co.* v. *Fulford,* 159 *Ga.* 812 (127 S. E. 274), Mr. Justice Beck, rendering the decision of the court, said: "The decedent being at the time of the homicide an adult possessed of normal mental and physical faculties though he was prevented by noises in the vicinity from hearing the train which approached him from the rear, could and should have exercised the faculty of sight, by which he would have ascertained upon merely turning his head that the train was approaching. He knew that he was in a place of danger when walking longitudinally along the track, and knew that there were noises there which interfered with his hearing, and consequently the slightest degree of care upon his part would have required him to look in the direction from which the danger might come, and a failure to exercise this care was such gross neglect upon the part of the decedent as to bar a recovery for his death."

There were no allegations in the petition in this case showing any knowledge on the part of the servants of the defendant which would overcome the presumption as to them that the deceased was an adult of normal mental and physical faculties. By the slightest degree of care, that is, the turning of her head to ascertain the oncoming train, she would have prevented the tragedy. We think that the court properly sustained the demurrer to the first count; for it affirmatively appears from the facts pleaded in the petition that her own lack of ordinary care was the proximate cause of her death. See, in this connection, *Atlanta & West Point R. Co.* v. *Pressley,* 44 *Ga. App.* 142 (160 S. E. 663); *Southwestern R. Co.*

v. *Johnson,* 60 *Ga.* 667; *Hendricks* v. *Western & Atlantic R. Co.,* 52 *Ga.* 467; *Parish* v. *Western & Atlantic R. Co.,* 102 *Ga.* 285 (29 S. E. 715, 40. L. R. A. 364) ; *Fowler* v. *Ga. R. &c. Co.,* 133 *Ga.* 664 (66 S. E. 900).

We think the court correctly overruled the general demurrer to the second count of the petition. It was based on wilful and wanton negligence on the part of the engineer of the defendant. Under the principle of law that where wilful and wanton negligence is shown, no amount of contributory negligence, however gross it may be, on the part of the deceased, will bar a recovery, taken with the other facts pleaded in the petition, we think it was sufficient to withstand a general demurrer.

■ The only remaining question to be decided is whether the judge committed error in granting a nonsuit. The general rule is that a railroad company owes to a trespasser walking upon its tracks the duty not to injure him wilfully or wantonly after his presence is known to its servants in charge of the train; but this duty is not active until his presence is actually known. *Southern Ry. Co.* v. *Eubanks,* 117 *Ga.* 217. The case here proceeded on the theory of wilful and wanton negligence on the part of the defendant. The testimony of Bird, who was the only witness to the homicide, and who was introduced by the plaintiff, was in substance as follows: "I am an engineer on the Atlanta and West Point Railroad. . . I was operating, on December 14, 1929, passenger-train number 31. . . I know where Dixie Mills are. There are two tracks of railroad at Dixie Mills. . . One is the main-line track, and the other is what is known as the M. & B. track. . . There is a public grade-crossing just after you come down by Dixie Cotton Mill. I blowed the regular signal for that crossing. The blow-post for that crossing is right around the curve there, along there about the Dixie Mills. At that point I could not see up to the crossing. .. . We were then in the city of LaGrange. We were. running about 25 or 30 miles per hour, about the usual speed.. The bell was ringing. . . I first discovered Mrs. Pressley, this lady that was killed, after I got around the curve. At that time she was walking on the M. & B. main line. She was going in the same direction I was going. At the point she was at that time, she was twelve or. fifteen feet away from the railroad-track I was running my train. on. If she had remained on the M. & B. side-track, she could not.

have been struck by the passage of my train on the main-line track. . . When I first saw her, I suppose I was something like one hundred yards, may be one hundred and twenty-five yards, something like that, from her. She was coming down the track going the same direction I was going; and almost immediately—I was still watching her—she walked diagonally across, didn't turn her face, just walked diagonally across from the track she was on to the track I was on. As soon as she did, the supposition was with me, she had heard the train coming and was mistaken as to which track I was on. So I begun to blow the whistle alarm. She never did turn her head at all. She just walked down there with her arms folded this way [indicating]. I put the brakes in emergency. I turned loose the whistle-cord to put on the emergency and the fireman caught the whistle-cord and blowed the whistle. The brakes worked. When I stopped, I suppose I was a car and a half, may be, passed by. There wasn't anything more that could be done to try to stop my train after I saw her step over on the main-line track. . . If I had been expecting to stop when I first saw her, and had had my hand on the brake and made the emergency application, I possibly could have stopped; but not having any notice whatever of any occasion why I should make this emergency application, I could not stop in that distance. If I had used all the precautions to stop that I could make when I first saw her, I don't think I could have stopped the train before I hit her. . . I sounded the emergency whistle when I saw her start across to my track. I sounded the distress whistle and applied the brakes in emergency. After blowing the whistle, she was in the middle of the track I was on, when I reached for the brakes. I applied the brakes before she got in the middle of the track I was on. . . Mrs. Pressley was walking along at a very ordinary gait, she was walking slow, she wasn't running."

Does this testimony evince on the part of the servants of the defendant "a wilful intention to inflict the injury," or was their conduct "so reckless or so charged with indifference to the consequences, where human life or limb was involved, as to justify the jury in finding a wantonness equivalent in spirit to actual intent?" *Central of Ga. Ry. Co.* v. *Moore, 5 Ga. App.* 562 (63 S. E. 642). Taking the case mathematically, it seems to be almost an irresistible conclusion from the testimony of the engineer that all was done that

could have possibly been done to avert the tragedy in so short a time, without taking advantage of any presumptions in favor of the defendant. His testimony shows that upon first seeing the deceased she was 100 to 125 yards distant on a side-track, and that his train was proceeding at the usual speed of 25 or 30 miles per hour. It is then apparent that approximately 11 seconds elapsed from the time when he first saw the deceased until the fatal accident. He was driving his locomotive down a main track, and certainly was not called upon to .stop his train by seeing the deceased on another track out of any danger of his train. His testimony further shows that it was doubtful if, even at the time he first saw the deceased on the side-track, whether, if he had then been called upon to do so, he could have stopped his train. Now taking into consideration the time that she necessarily consumed in walking from the side-track over to a place of danger on the main track, a forceful and logical inference is that when she did first reach a place of peril on his track he had so far advanced that it would have been impossible for him to bring his train to a stop, so as to avoid the tragedy. Under these circumstances, what was the safeest and most reasonable thing for him to do? If he could not stop, or even if it was doubtful if he could stop, then the deceased was the only agency that could prevent the accident, for she could move off the track in much shorter time than he could bring his train to a halt. He thereupon blew his whistle, so that she could discover her mistake and move from the track and thereby avert the accident. After it was apparent to him that she was not going to heed his whistle, he immediately applied his brakes in emergency, with the whistle still going, which under his testimony was all that he could do to stop his train. Take this for illustration: Suppose that the premises adopted above were absolutely correct, that the engineer upon seeing the deceased go upon his track in the path of his moving train did nothing, but waited until he was only a short distance from her and then applied his brakes, would not the plaintiff have then contended that his failure to give the deceased warning after it became apparent that she was in a place of danger and that he could not stop his train was wilful and wanton negligence, for the reason that had she been given warning, as a reasonably prudent person she would have got off the track? See *Central R. &c. Co.* v. *Denson,* 84 *Ga.* 774 (11 S. E. 1039).

However, giving the plaintiff every benefit of the doubt and construing the evidence most strongly in her favor, we still do not think that the evidence presents a case of wilful and wanton negligence. Clearly the situation was not perilous when he first saw the deceased, for she was on an adjoining track out of danger from his train. When she started diagonally across the track she was on, to his track, he certainly had the right to assume that she would not walk into a place of danger after he had blown his whistle for the first time. Even if he did realize that immediately at the time she started on her diagonal course she was going to walk onto his track, he did the only thing that was required of him, that is, gave warning of his approach by blowing his whistle. Even if the deceased had been, at the time he first saw her on the track upon which his train was approaching, and he gave warning of his approach, as the uncontradicted evidence shows that he did in time for her to have got off of the track, and she being a person apparently possessing normal mental and physical faculties, his failure to exercise proper judgment as to when the exact moment of peril began could not be charged against him as being wilful and wanton. In *Southern Ry. Co.* v. *Wiley,* 9 *Ga. App.* 249 (71 S. E. 11), Hill, J., quoted with approval 2 Rorer on Railroads, § 1122, as follows: "At places other than crossings, or on public highways, a railroad track is the private property of the company, and no one other than the company's servants or employees, in the necessary discharge of duties there, has any right to be thereon, and more especially as to their using the same as a thoroughfare or pathway, on which to walk or travel. And though the company may not wantonly injure persons thus intruding upon and using the same, yet if the person be an adult, not known to those in charge of the train to be deficient in discretion, or in physical ability to take care of himself, or not known to be deficient in his faculty of hearing, and not in any way presenting indications of being disabled or incapable of taking care for his safety, then the persons in charge of the train have the right to conclude, and to act on that conclusion, that such person is in possession of all his proper faculties to enable him to do so, and will leave the track in time to save himself from injury, and are not bound to stop or check up the train on his account." And to illustrate the acts of the engineer in the case at bar as being prudent, the learned author adds:

"But as a matter of ordinary prudence and care, it is their duty to sound the whistle and ring the bell, as a warning of the approaching danger." Then would the fact that when he saw the deceased get in a place of danger on his track he supposed that she had heard his whistle, and was mistaken as to which track he was approaching on, alter the situation and cause this presumption to be of no avail? We think not. "The railroad company had a right to suppose he [she] was such a man [woman] of sound mind, sound hearing, and that he [she] would take reasonable care to protect himself [herself] in case of danger." 1 Dillon (C. C. R.) 579-82, Finlayson *v.* Chicago &c. R. Co. After she became in a place of danger on his track he could assume, and act on that assumption, that she would heed his warning, discover her mistake, and get off the track in time to avert the accident. *Sims* v. *Macon & Western R. Co.,* 28 *Ga.* 93. As was said by Mr. Justice Hill, in *Southern Ry. Co.* v. *Wiley,* supra, "The exact period of time in which ordinary diligence would have required him to discover that the decedent would not get off the track was necessarily largely a matter of judgment under the circumstances; and if he failed to exercise proper judgment in realizing when the exact moment of peril would begin, this failure certainly could not be counted against him as wilful or wanton, although it might have been charged against him as simple negligence." We are therefore of the opinion that the evidence of the plaintiff entirely failed to show any wilful or wanton negligence on the part of the defendant, and that a nonsuit was properly granted. The cases of *Western & Atlantic R. Co.* v. *Bailey,* 105 *Ga.* 100 (31 S. E. 547), *Central R. &c. Co.* v. *Denson,* supra, and other decisions allowing recovery, or holding the question of recovery to be one for the jury, under some similarity of facts with the case at bar, are easily distinguishable from the case here decided.

*Judgment affirmed on main bill of exceptions; cross-bill dismissed. Broyles, C. J., and Guerry, J., concur.*