24717. HUMPHRIES, adm'x, *v.* SOUTHERN RAILWAY CO

DECIDED JUNE 22, 1935. REHEARING DENIED AUGUST 2, 1935.

*Robert B. Blackburn,* for plaintiff.

*Maddox, Matthews & Owens, Walter Matthews, E. S. Griffith,* for defendant.

GUERRY, J. Suit was brought against the Southern Railway Company for the death of Charlie Humphries, alleged to have been caused by one of the defendant's trains. A general demurrer to the petition was sustained, and the plaintiff excepted. The petition alleges: "(3) that on or about the 9th day of December, 1932, Charlie Humphries was struck down and killed by a passenger-train then and there under the control of the Southern Railway Company. . . (5) that at the time at which the said Charlie Humphries was struck down, the said Charlie Humphries was going in the same direction as that at which the engine and train of cars . . was going, and was in plain view, and by the exercise of ordinary care the agents of the Southern Railway Company could have seen him." "That the place where petitioner was walking was between the double tracks of defendant, and was west of a public crossing and to the east of defendant's station in the town of Tallapoosa; that the servants and agents of defendant in charge of the train knew that the public generally used that part of its tracks on which deceased was walking as a walkway between said crossing and the depot, and that said use had continued for 10 years or longer; that defendant's engineer and fireman failed to give deceased any warning by whistle or bell; that defendant's engineer saw deceased when the train was 1000 feet distant from him, but failed to give any warning as aforesaid, and failed to check the speed of its train; all of which was negligence. . . That with a reckless and wanton disregard for human life and safety, the Southern Railway Company by and through its agents and employees, at the time at which the said Charlie Humphries was struck down was moving the train of cars then and there under its control at a reckless rate of speed, making at the time over forty miles per hour. . . That the said Charlie Humphries at the time at which he was struck down and killed, he was at a point within the city limits of the City of Tallapoosa that had been and was being used by pedestrians coming into the City of Tallapoosa, and was at a place where

the defendant company and its employees and agents knew and had knowledge that the tracks of the defendant company at the point designated was so being used; and it was the duty of the defendant company, possessing such knowledge of the general use being made, to be on the lookout for the reasonable safety of pedestrians using the tracks as a pathway; and that in causing its train to make such a rate of speed of over 40 miles per hour as herein charged, under the circumstances as herein shown, was negligence. . . That defendant company through its agents and employees . . saw the said Charlie Humphries at a distance within which the defendant company by the exercise of ordinary care could have avoided running him down . . had it been operating the engine then and there under its control at a reasonable and lawful rate of speed."

We are of the opinion that the court erred in dismissing the petition on general demurrer. The first question which arises is, what duty was owed by the defendant company to the deceased? The deceased was walking between the tracks of the defendant, not at a public crossing, but within the confines of a municipality. The petition alleges that he was at a place which had been frequently used by pedestrians for over a period of ten years, and that the defendant company and its employees and agents had knowledge of this use. First, we think the deceased was no more than a trespasser upon the tracks of the defendant. Under the decisions of this court and of the Supreme Court, the fact that pedestrians frequently used a part of the right of way to walk without objection on the part of the railroad company would not make one walking thereon a licensee. In *Central of Ga. Ry. Co.* v. *Tapley,* 145 *Ga.* 792 (89 S. E. 841), it was said: "Mere allegations that for a long time the public generally have continuously used a well defined pathway in a populous rural district that extends along a railroad track on an embankment immediately outside of the rails until it reaches a trestle and then crosses the outside rail and continues over the trestle between the rails are insufficient to allege an implied license by the railroad company to the public to use the trestle as a pathway, or to show that the employees of the company in charge of the train were bound to anticipate that a person might be upon the track at that place. *Gulf Line Ry. Co.* v. *Way,* 137 *Ga.* 109 (72 S. E. 917)." See also *Potts* v. *Southern Ry. Co.,* 47 *Ga. App.* 268 (170 S. E. 319). It has been stated to be the general

rule that "ordinarily the only duty owing by a railway company to a trespasser upon or about its property is not to wantonly or wilfully injure him after his presence has been discovered" (*Hammontree* v. *Southern Ry. Co.*, 45 *Ga. App.* 728, 165 S. E. 913); and while this rule has been held not to extend to all cases, in that there arise circumstances which make it incumbent on the agents of the railroad to anticipate the presence of a trespasser on its tracks (*Crawford* v. *So. Ry. Co.*, 106 *Ga.* 870, 33 S. E. 826; *Ashworth* v. *So. Ry. Co.*, 116 *Ga.* 635, 43 S. E. 36, 59 L. R. A. 592; *Bullard* v. *Southern Ry. Co.*, 116 *Ga.* 644, 43 S. E. 39), and conceding in the case at bar that the agents of the defendant should have anticipated the presence of the defendant on its track at the point he was killed, "the mere failure of the employees of a railway company to discover the presence of a trespasser at a place where and a time when it was their duty to anticipate the presence of trespassers, and thereafter to take such needful and proper measures for his protection as ordinary care might require, might amount to a lack of ordinary care on the part of the railway company, but would not, in and of itself, amount to wilful and wanton misconduct" (*Hammontree* v. *Southern Ry. Co.*, supra); and it affirmatively appearing that the deceased was a normal adult person in possession of all of his faculties, and could by the exercise of ordinary care have avoided the consequences of the defendant's negligence, he is not entitled to recover.

However, the rule that one, himself guilty of a lack of ordinary care, can not recover for injuries sustained by the negligence of another does not extend to those cases where the acts of the party inflicting the injuries are wilful and wanton. *Lowe* v. *Payne,* 156 *Ga.* 312 (118 S. E. 924), and cit. Then the question remains, would the jury be authorized to find that the facts as alleged in the petition (which are to be taken as true on demurrer), to wit, that deceased was actually discovered by the engineer while 1000 feet away, and "that with a reckless and wanton disregard for human life and safety," and without giving any warning by ringing a bell or blowing a whistle or attempting to check the speed, the train struck and killed the plaintiff's husband, amounted to wilful and wanton negligence, for which the defendant is liable? We think this question should be answered in the affirmative. "A failure to exercise ordinary care to prevent injury to a trespasser after his

presence has become actually known may amount to wantonness." *Hammontree* v. *Southern Ry. Co.,* supra, and cit. After the presence of a trespasser upon the track of the defendant in front of its approaching train is discovered, it becomes the duty of the agents in charge of the train to give him some warning of his dangerous position. Even though such trespasser may not be deficient in any of his faculties of sight or hearing, or there be no surrounding physical conditions to interfere with or hinder the exercise of such faculties, and while the agents in charge of the train have the right to conclude and act on the conclusion that such person will leave . the track in time to save himself from injury, in that they are then under no duty to check the speed of the train, yet "as a matter of ordinary prudence and care, it is their duty to sound the whistle and ring the bell, as a warning of the approaching danger." 2 Rorer on Railroads, § 1122. See also *Pressley* v. *A. & W. P. R. Co.,* 48 *Ga. App.* 382 (172 S. E. 731); *Southern Ry. Co.* v. *Wiley,* 9 *Ga. App.* 249 (71 S. E. 11). And the jury would be authorized to find that such negligence, under the circumstances, amounted to wantonness. See, in support of this ruling, *Hines* v. *Rubnitz,* 26 *Ga. App.* 354 (106 S. E. 589); *Central R. &c. Co.* v. *Denson,* 84 *Ga.* 774 (11 S. E. 1039); *Ga. R. &c. Co.* v. *Auchinachie,* 142 *Ga.* 513 (83 S. E. 127); *Tice* v. *Central of Ga. Ry. Co.,* 25 *Ga. App.* 346 (103 S. E. 262); *Charleston & Western Carolina Ry. Co.* v. *Johnson,* 1 *Ga. App.* 441 (57 S. E. 1064); *W. & A. R. Co.* v. *Bailey,* 105 *Ga.* 100 (31 S. E. 547); *L. & N. R. Co.* v. *Plunkett,* 6 *Ga. App.* 684 (65 S. E. 695); *Southern Ry. Co.* v. *Chatman,* 124 *Ga.* 1026 (53 S. E. 692, 6 L. R. A. (N. S.) 283, 4 Ann. Cas. 675); *Hambright* v. *Western & Atlantic R. Co.,* 112 *Ga.* 36 (37 S. E. 99); *Central of Ga. Ry. Co.* v. *McKey,* 13 *Ga. App.* 477 (79 S. E. 378).

*Judgment reversed. MacIntyre, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. I agree that under the facts stated in the petition the deceased was a trespasser upon the premises of the railway company. That being true, the defendant would not be liable except for wilful and wanton negligence after it had discovered the presence of the trespasser in a position of peril. The *petition does not allege* that the defendant's agents were guilty of *wilful and wanton negligence,* and the facts set forth in the peti-

590

tion fail to show such negligence. Although the engineer saw the deceased 1000 yards away, he was not *on* the track, but was walking *between* the double tracks, and the engineer could reasonably have anticipated that the trespasser (presumably a person of ordinary hearing and intelligence) would hear the noise of the train and step away a few feet into a place of safety. See *Sims* v. *Macon & Western R. Co.*, 28 *Ga.* 93; *Central R. Co.* v. *Brinson*, 70 *Ga.* 207 (5); *Hammontree* v. *Southern Ry. Co.*, 45 *Ga. App.* 728; *Potts* v. *Southern Ry. Co.*, 47 *Ga. App.* 268. In my opinion the petition was properly dismissed on demurrer.

## ON MOTION FOR REHEARING.

GUERRY, J. It is insisted by plaintiff in error that the allegations of the petition are insufficient to show that the negligence alleged did amount or could amount to that degree of negligence which might be termed wilful or wanton. In *Charleston & Western Ry. Co.* v. *Johnson*, 1 *Ga. App.* 441 (57 S. E. 1064), it was said: "A failure to exercise ordinary care to prevent injuring him (a trespasser) after his presence is known, is usually so akin to wilfulness or wantonness as to create liability." This seems to be the rule which has been universally recognized and followed in the courts of this State. It was quoted approvingly in *Southern Ry. Co.* v. *Wiley*, 9 *Ga. App.* 249, 251 (71 S. E. 11). This court in that case said: "While we think the evidence in this case is exceedingly close on the question of liability, we are so reluctant to decide that the verdict of the jury on questions purely of fact is unsupported by any evidence, and therefore contrary to law, that we prefer to grant another trial on a specific error of law." The new trial in that case was granted because the charge of the trial judge failed "to restrict the right of recovery to the evidence of wilful and wanton conduct on the part of the engineer, but distinctly instructed the jury that they would be authorized to find a verdict against the railroad company if they found from the evidence that the defendant's employees were guilty of negligence in causing the homicide of the decedent. . . The repeated instructions of the judge, that the engineer, in the exercise of ordinary diligence, should have done all he could do to prevent the injury *as soon as he discovered the decedent walking on the track* [italics ours], or the railroad company would be liable for negligence, was not the enunciation of a correct principle of law as applicable to the facts of this

case." The negligence necessary to support a verdict in such case must be wanton and wilful. The exact point where ordinary negligence or the lack of ordinary care passes into and becomes wilful and wanton negligence is a question for the jury, under definite instruction from the trial judge that the facts must show that the failure to exercise ordinary care was not only negligence but that it amounted to wilful and wanton negligence. This has been clearly pointed out in the cases cited in the main opinion.

It is also insisted that in view of the allegation that deceased was walking on a path "between the tracks," and not on the tracks, he was not, therefore, in such a place of danger as would give rise to any duty on the part of the defendant company. The petition alleges that he was struck while walking along this path. It must have been a place of danger, although it might be a circumstance to show a reason on the part of the defendant's employees for the alleged failure to ring the bell or sound the whistle. It still remains a question for determination by the jury as to the liability of the defendant company under the circumstances.

*Rehearing denied. Broyles, C. J., dissents.*