26148. SOUTHERN RAILWAY. COMPANY *et al.* v. EVANS.

Decided July 14, 1937.

*O. R. Hardin, Sapp & Maddox, Maddox, Matthews & Owens,* for plaintiffs in error.

*Carlton C. McCamy, Rains & Rains,* contra.

BROYLES, C. J. Mrs. Willie Mabel Evans brought suit against the Southern Railway Company and Oscar Fricks, the engineer in charge of the company's train, for damages on account of the homicide of her husband. The petition was in two counts; the first charging wilful and wanton negligence, and the second simple negligence. The defendants filed separate demurrers, general and special, to both counts, which were overruled. To this ruling the defendants filed exceptions pendente lite, on which error is assigned in the bill of exceptions. After the introduction of the plaintiff's evidence the court, on motion of defendants, granted a nonsuit as to the first count. The case was submitted to a jury on the second count, and a verdict for $5000 was rendered in favor of the plaintiff against both defendants. A motion for new trial was overruled, and on this judgment error is assigned.

The second count of the petition alleged, in part, that on January 8, 1936, at approximately three o'clock in the afternoon, W. Harley Evans, husband of the plaintiff, was killed by being struck by a northbound locomotive engine of the defendant company, which was operated by Oscar Fricks, engineer, and which was pulling only a caboose; that the deceased was killed at a point about one mile north of the city limits of Dalton, while walking along the line of railroad of the defendant company in a northerly direction, going from his place of employment to his home; that

he was within one hundred feet of a private crossing when he was struck from behind by the engine; that his back was toward the approaching engine and he was oblivious of its approach; that the train, composed only of an engine and caboose, "was making very little noise, there being no rolling cars," and it "slipped silently" upon plaintiff's husband from behind and struck and killed him; that the place where he was killed on the line of railroad "is straight, clear, open, and unobstructed for a distance of more than one half mile, and a person on the line of railroad of the defendant company at the place can be easily seen by the engineer in the cab of an approaching engine for a distance of one half mile;" "that the locomotive engine of the defendant company was being operated by the engineer at the high, unusual, unreasonable, reckless, and dangerous speed of sixty miles per hour; the speed of the locomotive engine was so great that the husband of the plaintiff was knocked for a distance of eighty feet from the impact and instantly killed; that the line of railroad of the defendant company, along which the husband of plaintiff was walking and at the point where he was struck and killed as aforesaid, was used by persons living in the vicinity as a walkway continuously during the day and night, and has been used by the public generally for the past twenty years or more, and the use of said line of railroad was known to the defendant company, its servants and agents, and known to the engineer and to the servants and agents in charge of the operation of the locomotive engine and train of the defendant company which struck and killed the husband of plaintiff, and it thereby became the duty of the defendant company and its agents, and particularly the engineer, to anticipate the presence of pedestrians on the line of railroad at such point, and to take precaution to avoid injuring any one thereon;" that because of the use of the railroad at this point as a walkway by the public generally, "with the full knowledge and consent" of the defendants, it was the duty of the defendants "to keep and maintain a constant and vigilant lookout along the line of railroad ahead of said engine, and to anticipate the presence of pedestrians" at this place, "and to run the train slowly and under control;" that the engineer, while approaching the crossing, "failed to signal his approach to the said crossing by blowing the whistle of his engine;" that "if the said signal of approach had been given,

as required in the exercise of ordinary care, plaintiff's husband could have and would have heard said signal, and could have and would have removed himself from the line of railroad of the defendant company and would not have been struck and killed; plaintiff's husband could not hear the approach of the locomotive engine and train of the defendant company, because the same approached him running very quietly, and because his hearing was impaired, and it was negligence on the part of the engineer to fail to blow said whistle;" that the engineer failed to blow the whistle, ring the bell, or give any warning of his approach; that the use of the railroad at this place by the public, and the location of the private crossing, were known to the defendants; that the defendants were negligent in running the train, under the circumstances alleged, at the unusual and dangerous speed of sixty miles per hour, in failing to anticipate the presence of pedestrians and plaintiff's husband on the railroad at such time and place, in failing to run slowly and keep the train under control at such time and place, in failing to keep a vigilant lookout ahead at such time and place, in failing to blow the whistle, ring the bell, or give any warning of the approach of the train at such time and place, and in failing to discover the presence of plaintiff's husband and stop the train in time to avoid killing him; and that the negligence of the defendants was the proximate cause of the death of plaintiff's husband.

The defendants demurred generally to this count, on the ground that it set out no cause of action; and specially to various paragraphs, on the ground that they were merely conjecture, argumentative, and conclusions of the pleader.

Conceding (but not deciding) that the demurrers to the petition were properly overruled, we think that under the evidence adduced a verdict for the defendants was demanded. The defendants in their answers denied all the allegations of negligence, denied liability, and averred that the death of the deceased was due to his own negligence, and that by the exercise of ordinary care he could have avoided the same. The undisputed evidence shows that the deceased was a trespasser; that his hearing was impaired; that, although knowing that he could not hear well, he was walking along the railroad-track with his back toward the train which struck and killed him; and that he had been warned not to walk

on the railroad-track. The plaintiff testified: "Mr. Evans was deaf, but not plumb deaf; he was pretty hard of hearing, and you had to talk loud to him. . . He was hard of hearing. . . I have warned him about walking on that track, that it was dangerous. . . He being deaf and walking that trestle, I had warned him it was dangerous."

In *Atlantic Coast Line R. Co.* v. *Fulford,* 159 *Ga.* 812 (127 S. E. 274), the principle laid down in headnote 5 is controlling in the instant case. In the *Fulford* case the decedent was prevented by noises in the vicinity from hearing the train; and in the instant case the decedent was prevented by his own defective hearing from hearing the train. Paraphrasing headnote 5 of the *Fulford* case, but not altering the principle of law there laid down, we have the following: The decedent, being at the time of the homicide an adult possessed of normal mental faculties, though he was prevented by his defective hearing from hearing the train which approached him from the rear, could and should have exercised the faculty of sight, by which he would have ascertained upon merely turning his head that the train was approaching. He knew that he was in a place of danger when walking longitudinally along the track, and knew that his defective hearing would interfere with his hearing an approaching train, and consequently the slightest degree of care on his part would have required him to look in the direction from which the danger might come; and a failure to exercise such care was such gross neglect on his part as to bar a recovery for his death. Knowing that his hearing was defective, he voluntarily exposed himself to danger by getting on the railroad-track and walking thereon without looking back. In *Lowe* v. *Payne,* 156 *Ga.* 312 (118 S. E. 924), it was held that where one voluntarily exposed himself to danger and "was struck and killed by a train of the railroad company, his voluntary exposure of himself to danger precludes a recovery for the homicide in consequence of the negligence of the railroad company's agents and employees, in the absence of wilful and wanton negligence on the part of the employees of the company engaged in the operation of the train;" and this is true though the place where the decedent was struck "upon the track was one at which it was the duty of the employees of the defendant company to have anticipated the presence of pedestrians upon its tracks, and though the jury

would have been authorized to find, under the facts, that the employees of the company failed to exercise ordinary care to discover the exposed condition of the decedent." In the instant case any proved conduct of the employees and agents of the railroad company must be presumed to have been "in the absence of wilful and wanton negligence," a nonsuit having been granted as to the count alleging wilful and wanton negligence, and that judgment not having been assigned as error. In *Central Railroad* v. *Brinson*, 70 *Ga.* 207, a boy over fifteen years of age was injured by the railroad; and the court, after setting out the facts incident to his injury, ruled as follows: "*Held*, that he was bound to be watchful and careful, and the absence thereof makes him chargeable with negligence, which will prevent a recovery. His conduct in this case would, perhaps, not have been short of culpable negligence even in one who was rightfully on the track; and it might and could have been easily avoided." The case of *Vaughn* v. *L. & N. R. Co.*, 53 *Ga. App.* 135 (185 S. E. 145), cited by the defendant in error, is differentiated by its facts from this case.

Conceding, but not deciding, that the defendants were negligent as alleged, the evidence demanded a finding that the decedent, by the exercise of ordinary care, could have avoided the consequences of that negligence, and avoided the injury to himself; and therefore the court erred in overruling the motion for new trial. This ruling being controlling in the case, the special grounds of the motion are not passed on.

*Judgment reversed. MacIntyre and Guerry, JJ., concur.*