26594. RICHARDSON *v.* POLLARD, receiver.

778

Decided March 18, 1938.  Rehearing denied April 1, 1938.

*Trotter & Barger, F. M. Gleason,* for plaintiff.

*Rosser & Shaw, Maddox, Matthews & Owens,* for defendant.

MacIntyre, J.  The widow of the deceased brought suit against a railroad company for the homicide of her husband, who, when walking along the pathway between the west spur track and the main track, at a place other than a public crossing or highway, although between two public crossings in the City of Rossville, was struck and killed by the defendant's locomotive.  The status of the deceased at the time he was killed was that of a trespasser.  *Potts* v. *Southern Ry. Co.,* 47 *Ga. App.* 268 (170 S. E. 319).

■ The first count of the petition alleged ordinary negligence.  "If a homicide occurs at a place upon the track of a railroad company, where it was the duty of the servants of the company to anticipate the presence of persons on the track, and their failure to so anticipate the presence of others thereon amounts to mere negligence, the negligence of the person killed, under such circumstances, amounting to the lack of ordinary care for his safety, and where the person killed could by the exercise of ordinary care have avoided the consequences to himself of such negligence of the servants of the company, will prevent a recovery by a plaintiff who sues for such homicide."  *Lowe* v. *Payne,* 156 *Ga.* 312, 316 (118 S. E. 924).  This is true even though some of the negligent acts of the company were violations of the city ordinance, which violations would be negligence per se.  Briefly stated the alleged negligence is: "(1) a failure to keep and maintain a constant and vigilant lookout ahead, and a failure to discover the presence of the deceased; (2) failure to blow the whistle, ring the bell, or give any other warning signal; (3) violation of a city speed ordinance; (4) violation of a city ordinance requiring the ringing of the bell

for a distance of two hundred feet in approaching and passing over street crossings; (5) failure to provide and maintain at each public street crossing a 'human individual watchman or in lieu thereof a system of lights, bells, or wig-wags, or some suitable warning device or mechanism,' as required by a city ordinance; and (6) failure to use due care in controlling the movements of the train within fifty feet of the unnamed street crossing." See *Southwestern R. Co.* v. *Johnson,* 60 *Ga.* 667, where it was decided that if the deceased could, by ordinary care, have avoided the consequences to himself caused by the defendant's negligence, assuming that the defendant was negligent in not blowing its whistle at the proper time at the crossing of the public roads when checking its speed, then there could be no recovery for the deceased's death. See also *Potts* v. *Southern Ry. Co.,* 47 *Ga. App.* 268 (2) (170 S. E. 319).

The deceased at the time of the homicide was a strong, able-bodied man, forty-four years of age, in good health in body and mind, and had an expectancy of 25.09 years. He was an expert mechanic by trade and was capable of earning $1920 per year. However, he was "a little hard of hearing," but he could and should have exercised the faculty of sight by which he would have discovered that the train was approaching by merely turning his head. He knew he was in a place of danger when he was walking longitudinally along the track. He knew that his being "a little hard of hearing" would interfere with his hearing an approaching train, and consequently the slightest degree of care on his part would have required him to look in the direction from which the danger might come, and a failure to exercise this care was such gross negligence upon the part of the deceased as to bar a recovery for his death. The court did not err in sustaining the general demurrer to count one of the petition. *Atlantic Coast Line R. Co.* v. *Fulford,* 159 *Ga.* 812 (127 S. E. 274). In connection with the deceased being "a little hard of hearing," see *Southern Ry. Co.* v. *Evans,* 56 *Ga. App.* 177, 180 (192 S. E. 505); *Kennemer* v. *Western & Atlantic R.,* 42 *Ga. App.* 266 (155 S. E. 771).

We now come to count two of the petition which is based on the theory of wilful and wanton negligence. The rule that one, himself guilty of a lack of ordinary care, can not recover for injuries sustained by the negligence of another, does not extend to

those cases where the acts of the party inflicting the injury are wilful and wanton. We held in *Pressley* v. *Atlanta & West Point R. Co.*, 48 *Ga. App.* 382, 387 (172 S. E. 731), that if the deceased, with his back to the train, is approaching the track of the defendant on which the train is running, and the agent of the defendant gives warning of such approach when he first sees the deceased in danger, and immediately after, realizing that the deceased did not hear his warning, the engineer makes every effort to stop his train, the deceased being a person apparently possessing normal mental and physical faculties, his failure to use proper judgment as to *when the exact moment of peril* began can not be charged against him as wilful and wanton negligence. In *Humphries* v. *So. Ry. Co.*, 51 *Ga. App.* 585, 589 (181 S. E. 135) we held: "After the presence of a trespasser upon the track of the defendant in front of its approaching train is discovered, it becomes the duty of the agents in charge of the train to give him some warning of his dangerous position. Even though such trespasser may not be deficient in any of his faculties of sight or hearing, or there be no surrounding physical conditions to interfere with or hinder the exercise of such faculties, and while the agents in charge of the train have the right to conclude and act on the conclusion that such person will leave the track in time to save himself from injury, in that they are then under no duty to check the speed of the train, yet 'as a matter of ordinary prudence and care, it is their duty to sound the whistle and ring the bell, as a warning of the approaching danger.' 2 Rorer on Railroads, § 1122. See also *Pressley* v. *A. & W. P. R. Co.* [supra]; *So. Ry. Co.* v. *Wiley*, 9 *Ga. App.* 249 (71 S. E. 11). And the jury would be authorized to find that such negligence, under the circumstances, amounted to wantonness."

In the first case it was alleged that the deceased suddenly turned from a spur track to go on to the main track, and was not in a place of peril until he left the spur track, the place of safety where he was when the engineer first saw him. It affirmatively appeared that as soon as the deceased got so close to the track as to be in danger of the oncoming train the engineer immediately blew his whistle, and immediately after realizing that the deceased did not heed his warning he made every effort to stop his train, therefore the engineer could not be charged with wilful and wanton negli-

gence. In the last case it was alleged that the "deceased was actually discovered by the engineer while 1000 feet away, and 'that with a reckless and wanton disregard for human life and safety,' and without giving any warning by ringing a bell or blowing a whistle or attempting to check the speed, the train struck and killed the plaintiff's husband." *Humphries* v. *So. Ry. Co.,* supra.

While this court in the *Humphries* case, supra, quoted with approval *Hammontree* v. *So. Ry. Co.,* 45 *Ga. App.* 728 (165 S. E. 913), that "a failure to exercise ordinary care to prevent injury to a trespasser after his presence has become actually known may amount to wantonness," yet, the controlling question, relative to the count on wilful and wanton negligence in the *Pressley* case, the *Humphries* case, the case at bar, and in all cases where such a count in the petition sought to recover for wilful and wanton negligence, was not whether the agents failed to exercise ordinary care, extraordinary care, or slight care after the presence of the trespasser was actually known, but whether the failure to give the warning, such as the blowing of the whistle or the ringing of the bell, was such a circumstance as might, along with other circumstances, authorize the jury to find that the agents were guilty of wilful negligence, which is "wilful intention to inflict injury," or wanton negligence, which is "conduct 'so reckless or so charged with indifference to the consequences, where human life or limb was involved, as to justify the jury in finding a wantonness equivalent in spirit to actual intent.'" *Pressley* v. *Atlanta & West Point R. Co.,* supra. We think the failure to blow the whistle or ring the bell should be given the same consideration with respect to the whole count as we would give it whether it be denominated ordinary negligence, or a failure to exercise ordinary care, or by whatever name we may call it. It seems to us that the special difficulty may to some degree disappear if the circumstance is considered strictly on the ground of its relationship to the issue on trial, to wit, wilful and wanton negligence, regardless of the fact that the particular circumstance of the failure to blow the whistle or ring the bell may incidentally show some other kind of negligence. The defendant is not liable merely because he failed to exercise that degree of care that would prevent the injury. *Louisville & Nashville R. Co.* v. *Rogers,* 136 *Ga.* 674 (71 S. E. 1102). The mere failure to blow the whistle or ring the bell after the deceased is seen on the track

does not amount to wilful and wanton negligence, but the defendant is only liable if the engineer's failure to ring the bell or blow the whistle, when taken with all the other facts and circumstances, evinces "a wilful intention to inflict the injury," or his conduct is "so reckless or so charged with indifference to the consequences, where human life or limb was involved, as to justify the jury in finding a wantonness equivalent in spirit to actual intent."

The case of *Fox* v. *Pollard, 52 Ga. App.* 545 (183 S. E. 854), is distinguishable from the instant case, for in that case it was alleged that when the defendant's agent first saw the deceased, he was on the track walking with his head down, paying no attention, and apparently unaware of the approaching train, and it was alleged that the engineer did not give him any warning of the approach of the train, and he was therefore in a place of peril and so remained until he was injured. Thus, in that case, the defendant's agent had time to warn the deceased by blowing the whistle and ringing the bell after it was apparent that the deceased was in a place of peril. There is a general allegation that the deceased was in a place of peril, and then the petition undertakes to set up preliminary facts, which the plaintiff claims establish this general allegation, by stating that the deceased was on a path between the main track, upon which the train was approaching, and a spur track (that is, the deceased was not on the track on which the train was running), which path might or might not have been a place of peril at the time the engineer first saw him. Construing the pleadings most strongly against the pleader, there is no allegation in the second count as amended that the deceased was on the track or so *close* thereto that the train in passing would *necessarily* strike or injure him. Thus the pleader does not merely allege the ultimate fact that the deceased was in a place of peril, but undertakes to set out the preliminary facts which he claims established the ultimate fact, and from these preliminary facts there is no inference as to *when* or at *what time* the *deceased got into a place of peril. Lewis* v. *Amorous, 3 Ga. App.* 50, 53 (59 S. E. 338); *Hudgins* v. *Coca-Cola Bottling Co., 122 Ga.* 695, 699 (50 S. E. 974). And there are no facts alleged to show that the engineer had time to blow the whistle or ring the bell before injuring the deceased after discovering he was in a place of peril other than the general allegations to that effect. *Atlanta & West Point R. Co.* v.

*Pressley,* 44 *Ga. App.* 142 (160 S. E. 663). It has been said: "The petition shall 'plainly, fully, and distinctly' set forth the 'charge, ground of complaint, and demand.' Civil Code, § 4960. The rule is firmly fixed in the adjudications of this court that while as against a general demurrer a mere general averment of negligence will suffice, a plaintiff must, when called on by special demurrer to do so, specify wherein the negligence consisted and the particulars thereof. Of course there are limitations to this rule, and cases arise where the line must be drawn. The plaintiff must not be too general, and the defendant must not be too particular. But the rule is well established, though not always easy of application." *Hudgins* v. *Coca-Cola Bottling Co.,* supra. My associates are of the opinion that the demurrer and motion to strike paragraphs 17 and 18 were demurrers pointing out specifically a defect of substance, a failure to amend which, made the whole petition subject to general demurrer. A general demurrer enables a party to assail every substantial imperfection in the pleading. *Martin* v. *Bartow Iron Works,* 35 *Ga.* 320. The defect in the petition, and the defect pointed out in the motion to strike the named paragraphs, is a substantial defect. A necessary and substantial fact has been omitted from the entire petition. The plaintiff might be able to prove his petition as drawn, and yet not be entitled to recover, if it appears that although the engineer saw the deceased he did not see him in time to prevent the killing by giving warning or otherwise. In the decision in *Ripley* v. *Eady,* 106 *Ga.* 422 (32 S. E. 343), it was said: "A trial judge before whom a demurrer to a petition has been argued, and who reserves his decision thereon, is not bound, before rendering a judgment upon the demurrer, to give the plaintiff an opportunity to amend his petition." The demurrer to this petition was filed on March 4. An amendment was offered and allowed meeting certain special demurrers, but not the ground discussed in this opinion. The judge had these demurrers under consideration until August 4. There was no offer to amend and no complaint is made by counsel for plaintiff in error that he was not given time to cure, by amendment, the defect of substance pointed out by the demurrer and motion to strike. The court did not err in sustaining the demurrers interposed.

The writer thinks that in this case the court at one and the same time (and for the only time), passed on a demurrer con-

taining both general and special grounds, and sustained the demurrer to all grounds, and dismissed the action without giving the plaintiff an opportunity to amend; nor did he refuse to amend; and it appearing to me that the petition was thus dismissed on general order, and the writer being of the opinion that the petition was not subject to general demurrer, nor was it subject to the special demurrers except as above indicated (*Humphries* v. *So. Ry. Co.,* and *Fox* v. *Pollard,* supra), I think direction should be given that before the judgment of this court is made the judgment of the court· below, the plaintiff should be allowed to amend his petition so as to cure the above-indicated defects; that upon his doing so the case should stand for trial on the petition as thus amended, and that on his failure to do this, the judgment below should be unconditionally affirmed. *McSwain* v. *Edge,* 6 *Ga. App.* 9, 11 (64 S. E. 116); *Willingham* v. *Glover,* 28 *Ga. App.* 394 (111 S. E. 206); *Moseley* v. *Equitable Life Assurance Society,* 49 *Ga. App.* 424 (176 S. E. 87).

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur. MacIntyre, J., dissents.*

### ON MOTION FOR REHEARING.

GUERRY, J. Where a petition is lacking in substance and is subject to a general demurrer, the judge need not give the plaintiff opportunity to amend before sustaining the demurrer. *Ripley* v. *Eady,* supra. As we pointed out in the original opinion, the petition was subject to the general demurrer filed on March 4, although the petition was amendable. *Ellison* v. *Ga. R. Co.,* 87 *Ga.* 691 (13 S. E. 809). No amendment seeking to cure the defect in the petition was offered at any time. An amendment was offered, but it was not sufficient to render the petition good as against the general demurrer. The court therefore acted properly in sustaining the demurrer.

*Rehearing denied. Broyles, C. J., concurs.*

MACINTYRE, J., dissenting. The judge made but one ruling on the demurrers, and passed but one order with reference to the overruling of the demurrers, which was when he signed the general order overruling all demurrers both general and special; and the defendant, in reference to this one and only ruling on the demurrers, never had an opportunity to amend to meet the ruling of the court. I think he should have had at least one opportunity to

amend to meet the special demurrers after the judge had indicated his ruling thereon.